122 T.C. No. 1


UNITED STATES TAX COURT


NIELD AND LINDA MONTGOMERY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16864-02L.                    Filed January 22, 2004.


        Ps filed a joint Federal income tax return for the
taxable year 2000 reporting total tax of $2,831,360
and tax due of $196,006.  Ps failed to remit the latter
amount with their tax return.  R accepted Ps' tax
return as filed and assessed the tax reported therein.
Sec. 6201(a)(1), I.R.C.  R issued to Ps a final notice
of intent to levy, and Ps filed with R a request for a
collection due process hearing under sec. 6330, I.R.C.
In a subsequent telephone conversation between Ps'
counsel and R's Appeals officer, Ps asserted that they
had overstated the total tax on their original return
for 2000 and indicated that they intended to submit an
amended return showing that they were due a refund for
that year.  R issued to Ps a final notice of
determination in which he determined that Ps were not
entitled to challenge the amount of their tax liability
in the administrative proceeding, citing sec.
6330(c)(2)(B), I.R.C.  Ps filed with the Court a timely
petition for review of R's determination.  R filed a
Motion for Summary Judgment.  Ps opposed R's motion.

    <u>Held</u>:  R's Motion for Summary Judgment will be
denied.  Sec. 6330(c)(2)(B), I.R.C., permits Ps to
challenge the existence or amount of the tax liability
reported on their original tax return because Ps have
not received a notice of deficiency and have not
otherwise had an opportunity to dispute the tax
liability in question.

<u>Duncan C. Turner</u> and <u>Brian G. Isaacson</u>, for petitioners.

<u>Glenn P. Thomas</u> and <u>Julie L. Payne</u>, for respondent.

## OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Chief Special
Trial Judge Peter J. Panuthos, pursuant to the provisions of
section 7443A(b)(4) and Rules 180, 181, and 182.[1]  The Court
agrees with and adopts the opinion of the Special Trial Judge,
which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, <u>Chief Special Trial Judge</u>:  This matter is before
the Court on respondent's Motion for Summary Judgment, filed
pursuant to Rule 121.  As explained in detail below, we shall
deny respondent's motion.

### Background

On or about October 18, 2001, petitioners filed a timely

---

[1]  Section references are to the Internal Revenue Code, as
amended.  Rule references are to the Tax Court Rules of Practice
and Procedure.

joint Federal income tax return for the taxable year 2000 on which they reported total tax of $2,831,360, total payments of $2,636,723, and tax due of $194,637 plus an estimated tax penalty of $1,369, interest due on the unpaid balance of $9,704, and a penalty for failure to pay of $7,785, for a total amount due of $213,495.  Petitioners failed to remit the amount due with their tax return.  Respondent accepted the tax return as filed and assessed the amount reported therein.  Respondent did not audit petitioners' tax return for 2000 and did not send petitioners a notice of deficiency for 2000.

On March 19, 2002, respondent issued to petitioners a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing with regard to their unpaid tax for 2000.  The notice stated that petitioners owed tax, penalties, and interest totaling $222,315.34.

On April 18, 2002, petitioners submitted to respondent a Form 12153, Request for a Collection Due Process Hearing. Petitioners' request for an administrative hearing stated in pertinent part:

> The taxpayer has a good track record of paying his taxes timely in appropriate amounts, as evidenced by the 1997–1999 tax returns * * *.  However, in tax year 2000, the taxpayer had an extraordinary tax liability ($2,831,360) due to his exercise of several incentive and nonqualified stock options and the application of the AMT rates.  The taxpayer was able to pay $2,636,723 of the tax liability, but, unfortunately, the value of the stock received plummeted before year-end 2000 and is now essentially worthless.  Thus, the remaining tax

liability is currently thousands of times higher that
the value of the asset received. The taxpayer is
working diligently and in good faith with various
professional advisors to evaluate the situation and
remedy the outstanding tax liability.

Petitioners also stated that (1) they intended to prepare and
submit an amended income tax return for 2000 that would reflect
that they were entitled to a refund for that year; and (2) in any
event, the parties should explore alternatives to the proposed
levy including an installment agreement, an offer in compromise,
posting a bond, or substitution of other assets.

On July 2, 2002, Appeals Officer Jerry L. Johnson wrote to
petitioners to inform them that he had scheduled their Appeals
Office hearing for July 25, 2002. Appeals Officer Johnson's
letter stated in pertinent part:

As explained in the above mentioned code sections and
related documents, a taxpayer may dispute the
underlying liability in a collection due process
hearing only when a notice of deficiency was not
provided to the last known address of the taxpayer, or
where the taxpayer did not otherwise have an
opportunity to dispute the tax. Since that is the case
here, you will have the opportunity to discuss the
liability at the hearing. In that regard, if you plan
to present or discuss new material, please send me
copies at least five days before our meeting.

On July 22, 2002, Appeals Officer Johnson had a telephone
conversation with petitioners' representative. During the
conversation, petitioners' representative stated that, through
the misapplication of complex statutory provisions, petitioners
had overstated their tax liability for 2000 on their original

return and that they intended to submit an amended income tax return for 2000. Although the parties agreed that petitioners would be permitted to submit an amended return, the parties did not set a deadline for the submission of such amended return.

On September 26, 2002, without any further communication between the parties, the Appeals Office issued to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. The notice of determination, signed by Appeals Team Manager Debra M. Brush, stated in pertinent part: "The Taxpayer has indicated he would file amended returns to mitigate the liability, but such has not been done in a reasonable time, and the mere filing of such claim does not guarantee that the claim should be paid. Therefore, the levy should be allowed to proceed." As of September 26, 2002, petitioners had not submitted to respondent an amended income tax return for 2000. However, on October 11, 2002, petitioners submitted to respondent an amended income tax return for 2000 which reflects that petitioners are due a refund of $519,087.

On October 28, 2002, petitioners filed with the Court a Petition for Lien or Levy Action Under Section 6320 and/or 6330.[2] The sole issue raised in the petition is a challenge to the amount of petitioners' underlying tax liability for 2000.

---

[2] The petition was timely mailed to the Court on Oct. 25, 2002. Secs. 6330(d), 7502(a).

After filing an answer to the petition, respondent filed a Motion for Summary Judgment. Respondent maintains that there is no dispute as to a material fact and the Court should enter judgment as a matter of law sustaining the notice of determination dated September 26, 2002. Respondent argues that petitioners are barred from challenging the existence or amount of their underlying tax liability for 2000 in this collection review proceeding on the ground that the tax liability in question was "self-assessed" on petitioners' original tax return pursuant to section 6201(a)(1). Petitioners filed an Objection to respondent's motion.

This matter was called for hearing at the Court's motions session held in Washington, D.C. Counsel for both parties appeared at the hearing and made oral argument.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v.

<u>Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); <u>Zaentz v. Commissioner</u>, 90 T.C. 753, 754 (1988); <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. See <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985); <u>Jacklin v. Commissioner</u>, 79 T.C. 340, 344 (1982).

We are satisfied from our review of the record that there is no genuine issue as to any material fact. However, we conclude, contrary to respondent's position, that petitioners may challenge the amount of their underlying tax liability in this proceeding. Consequently, we shall deny respondent's motion.

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collect such tax by levy on the person's property. Section 6331(d) provides that at least 30 days before enforcing collection by levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.

Section 6330 generally provides that the Commissioner cannot proceed with collection by levy until the person has been given

notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination. See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000). Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate.

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing. Section 6330(c)(2)(A) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra. In addition, section 6330(c)(2)(B) establishes the circumstances under which a person may challenge the existence or amount of his or her underlying tax liability. Section 6330(c)(2)(B) provides:

SEC. 6330(c)(2). Issues at Hearing.--

\* \* \* \* \* \* \*

(B) Underlying Liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Respondent has promulgated interpretative regulations related to section 6330(c)(2)(B).  Section 301.6330-1(e), Proced. & Admin. Regs., provides in pertinent part:

> (e) Matters considered at CDP hearing--(1) In general.
> * * * The taxpayer also may raise challenges to the existence or amount of the tax liability specified on the CDP Notice for any tax period shown on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute that tax liability.

Section 301.6330-1(e)(3), Proced. & Admin. Regs., provides in pertinent part:

> (3) Questions and answers.  The questions and answers illustrate the provisions of this paragraph (e) as follows:  * * *
>
> Q-E2.  When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?
>
> A-E2.  A taxpayer is entitled to challenge the existence or amount of the tax liability specified in the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability.

Notably, respondent's regulations do not expressly bar a person from challenging the existence or amount of tax previously reported due on a tax return.

In any event, respondent's position in this case is articulated in his motion as follows:

> Respondent interprets section 6330(c)(2)(B) to mean that a taxpayer can challenge only those liabilities asserted by respondent that differ in amount from the taxpayer's self-determination.  By

granting taxpayers a right to contest the existence or amount of an underlying tax liability, Congress was concerned with tax liabilities asserted by respondent, rather than those originally computed and reported by the taxpayers themselves. This concern is evident in the phrasing of section 6330(c)(2)(B), which permits a taxpayer to contest an underlying tax liability in the event that he or she has been denied a prior opportunity to contest that liability in the form of a "statutory notice of deficiency" or "otherwise." It is nonsensical to permit taxpayers whose tax liabilities are self-determined to contest under section 6330 the liabilities they computed, voluntarily reported and declared to be correct under penalty of perjury.

Respondent further asserts that there is no suggestion in the legislative history underlying section 6330 that Congress intended to permit taxpayers to challenge taxes that were "self-assessed" on a tax return. Finally, respondent maintains that, inasmuch as section 6330 constitutes a waiver of sovereign immunity, the provision should be narrowly construed in the Commissioner's favor.

Before proceeding, we briefly review the principles of statutory construction that guide our analysis. It is well settled that in interpreting a statute, we start with the language of the statute itself. Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). If the language of the statute is plain, clear, and unambiguous, we generally apply it according to its terms. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); Burke v. Commissioner, 105 T.C. 41, 59 (1995). In Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984), we stated that "where a statute is clear on its face,

we would require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein." However, if a statute "is ambiguous or silent, we may look to the statute's legislative history to determine congressional intent." Ewing v. Commissioner, 118 T.C. 494, 503 (2002) (citing Burlington N. R.R. v. Okla. Tax Commn., 481 U.S. 454, 461 (1987)); see Wells Fargo & Co. v. Commissioner, 120 T.C. 69, 89 (2003); Allen v. Commissioner, 118 T.C. 1, 7 (2002).

Turning to section 6330(c)(2)(B), the provision plainly states that a person may challenge "the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." The term "underlying tax liability" is not defined in section 6320 or 6330, nor is there any specific reference to that term in the legislative history of the provisions. Taken in context, it is reasonable to interpret the term "underlying tax liability" as a reference to the amounts that the Commissioner assessed for a particular tax period. In this regard, the term "underlying tax liability" may encompass an amount assessed following the issuance of a notice of deficiency

under section 6213(a), an amount "self-assessed" under section 6201(a), or a combination of such amounts.

Consistent with the foregoing, the plain language of section 6330(c)(2)(B) bars a person who has received a notice of deficiency from challenging his or her underlying tax liability for that year (whether the liability was self-assessed or assessed as a deficiency) in a collection review proceeding inasmuch as the person was afforded a prior opportunity to challenge such liability under the deficiency procedures.[3] In contrast, where a person has not received a notice of deficiency and has not had a prior administrative or judicial opportunity to challenge the amounts the Commissioner assessed, section 6330(c)(2)(B) provides that such person may challenge the liability as part of the collection review procedure.

In the present case, petitioners' underlying tax liability consists of the amount that petitioners reported due on their tax return along with statutory interest and penalties. It is clear that petitioners did not receive a notice of deficiency for 2000. Indeed, respondent was not obliged to issue a notice of deficiency to petitioners because the assessment in question was

---

[3] See Naftel v. Commissioner, 85 T.C. 527, 531 (1985), where we observed that in a deficiency proceeding brought under sec. 6213(a), the Court may also consider the taxpayer's claim of an overpayment for the year(s) in issue under sec. 6512(b)(1).

entered under section 6201(a)(1).[4]  Moreover, the tax that petitioners reported due on their return is excluded from the definition of a deficiency under section 6211(a).

The question that remains under section 6330(c)(2)(B) is whether petitioners "did not otherwise have an opportunity to dispute such tax liability" for 2000.  Respondent contends that the phrase quoted above should be interpreted to exclude persons, such as petitioners, who have reported their tax liability on a duly filed tax return.  However, respondent's proposed interpretation would have the effect of adding terms and conditions to section 6330(c)(2)(B) that are inconsistent with the plain language of the provision.  As we see it, if Congress had intended to preclude taxpayers from challenging in a collection review proceeding taxes that were assessed pursuant to section 6201(a)(1), the statute would have been drafted to clearly so provide.  Simply put, the plain language of the statute as enacted, with an emphasis on whether there was an earlier opportunity to dispute the tax liability, provides a broader remedy than respondent's interpretation would allow.

---

[4]  Sec. 6201(a)(1) provides:

> (1) Taxes shown on return.--The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists are made under this title.

To date petitioners have not had an opportunity to "dispute" their tax liability for the taxable year 2000 in any sense of the term. Although petitioners reported the tax liability that is the subject of respondent's proposed levy on their original tax return, they now contend (and would like the opportunity to show) that they erred in computing the tax attributable to certain stock options that Mr. Montgomery exercised in 2000. The record does not reflect whether respondent has given consideration to petitioners' amended tax return for 2000 and their claim that their original return contained an error. In sum, we hold that section 6330(c)(2)(B) permits petitioners to challenge the existence or amount of the tax liability reported on their original income tax return because they have not received a notice of deficiency for 2000 and they have not otherwise had an opportunity to dispute the tax liability in question.[5]

---

[5] We also observe that carving out self-assessed amounts from the term "underlying tax liability" under sec. 6330(c)(2)(B), as respondent would have us do, does not comport with the use of that term in sec. 6311 which deals with the payment of tax by commercially acceptable means. Like sec. 6330, it is another provision of the Code relating to collection. Specifically, sec. 6311(d)(3)(A) provides in relevant part that "a payment of internal revenue taxes * * * by use of a credit card shall not be subject to section 161 of the Truth in Lending Act * * * if the error alleged by the person is an error relating to the underlying tax liability". Similarly, sec. 6311(d)(3)(C) provides in relevant part that "a payment of internal revenue taxes * * * by use of a debit card shall not be subject to section 908 of the Electronic Fund Transfer Act * * * if the error alleged by the person is an error relating to the underlying tax liability". In both instances, use of the term

(continued...)

Respondent asserts that it is nonsensical to permit petitioners to challenge in a collection review proceeding the very tax that they reported to be due (or "self-determined") on their original income tax return. We would not characterize an opportunity for respondent to review the correct amount of petitioners' tax liability as nonsensical. As discussed above, the controlling statutory language focuses on whether the person had a prior opportunity to dispute the tax liability--and petitioners have not had any such opportunity. Read in context, and as applied in this case, section 6330(c)(2)(B) extends the substantive and procedural protections of sections 6320 and 6330 to taxpayers who may have erred (in the Government's favor) in preparing and filing their tax returns. Given the complexity of the Federal income tax laws, such taxpayer errors may well be common. We conclude that section 6330(c)(2)(B) is fairly read as providing a remedy to such taxpayers.

Respondent also urges that the legislative history of section 6330(c)(2)(B) and principles of sovereign immunity require that the provision be construed narrowly in the Commissioner's favor. We disagree. We see no ambiguity in the plain language of section 6330(c)(2)(B) that would justify resort to the legislative history for guidance in interpreting the

[5](...continued)
"underlying tax liability" in sec. 6311 patently includes self-assessed amounts.

provision.  Moreover, we are not aware of any specific expression of congressional intent in the legislative history that would bar persons, such as petitioners, from raising a valid challenge to the existence or amount of tax previously reported due on a tax return.  See Huntsberry v. Commissioner, 83 T.C. at 747-748. Considering the plain language of the statute, we find respondent's reliance on principles of sovereign immunity equally unavailing.

Our holding in this case advances the policies underlying sections 6320 and 6330.  Those sections were enacted to provide taxpayers who have been notified that the Commissioner has filed a lien or intends to collect unpaid taxes by levy with a final opportunity to raise a spousal defense, offer an alternative means of collection, and/or challenge the appropriateness of the proposed collection action.  Moreover, as pertinent herein, Congress provided taxpayers who are confronted with a lien or proposed levy, but who have not had a prior opportunity to challenge the existence or amount of the tax liability in question, with the opportunity to do so.  In view of the statutory scheme as a whole, we think the substantive and procedural protections contained in sections 6320 and 6330 reflect congressional intent that the Commissioner should collect the correct amount of tax, and do so by observing all applicable laws and administrative procedures.

To reflect the foregoing,

<u>An order will be issued</u>

<u>denying respondent's motion for</u>

<u>summary judgment</u>.

Reviewed by the Court.

WELLS, COHEN, SWIFT, LARO, FOLEY, VASQUEZ, THORNTON, HAINES, WHERRY, and KROUPA, <u>JJ</u>., agree with this majority opinion.

WELLS, <u>C.J.</u>, concurring:  Respectfully, I write separately to respond to the suggestion, raised by Judge Chiechi in her opinion dissenting and concurring in part, that respondent's Motion for Summary Judgment should be denied on the narrow ground that section 301.6330-1(e), Proced. & Admin. Regs., 67 Fed. Reg. 2555 (Jan. 18, 2002), is dispositive of the issue in the instant case.  The issue before us is whether section 6330(c)(2)(B) permits a taxpayer to challenge in a lien and levy action in this Court the existence or amount of tax that the taxpayer previously reported due on his or her income tax return.  The majority concludes, and I believe correctly so, that the plain language of section 6330(c)(2)(B) permits a taxpayer to raise such a challenge.

Judge Chiechi, however, agrees with the result reached by the majority only insofar as petitioners may challenge the existence or amount of the tax liability specified in the "final notice".  I believe the majority, based on its interpretation of section 6330(c)(2)(B), correctly holds that petitioners may challenge the entire amount of tax, penalties, and interest that respondent assessed against them for the taxable year 2000.[1]

Section 301.6330-1(e), Proced. & Admin. Regs., quoted in

---

[1]  Petitioners not only challenge the $222,315.34 amount specified in respondent's final notice of intent to levy, but they also contend that they overpaid their taxes in the amount of $519,087.

full in the majority opinion, is an interpretative regulation that does nothing more than state a general proposition, to wit: A taxpayer may challenge in a collection review proceeding the existence or amount of the tax liability set forth in a final lien or levy notice if the taxpayer did not receive a notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. The regulation largely tracks the language of section 6330(c)(2)(B), with the exception that the term "underlying tax liability" contained in the statute is in the regulation replaced by the phrase "the tax liability specified on the CDP Notice".

Nowhere in the parties' motion or opposition or written and oral arguments have they cited or relied upon section 301.6330-1(e), Proced. & Admin. Regs. I suggest that the reason for the parties' failure to cite that regulation is that the proper disposition of respondent's motion depends upon the Court's statutory construction of section 6330(c)(2)(B).

In any event, the general rule espoused in the regulation is in no way dispositive of the specific question whether section 6330(c)(2)(B) permits a taxpayer to challenge the existence or amount of tax that was reported due on the taxpayer's return. It is respondent's position in the instant case that tax reported due on a return and assessed by respondent under section 6201 represents a unique assessment that Congress never intended to be

subject to challenge under section 6330(c)(2)(B) (and by implication section 301.6330-1(e), Proced. & Admin. Regs.). Under the circumstances, I believe that it is incumbent upon this Court to resolve the question the parties raised and argued by analyzing the controlling statutory provision, as opposed to relying upon a general statement appearing in an interpretative regulation.

FOLEY, THORNTON, and KROUPA, <u>JJ</u>., agree with this concurring opinion.

LARO, J., concurring:  I agree with the majority opinion.
I write separately to emphasize two points underlying that
opinion.

### 1.  The Term "Underlying Tax Liability" Is Unambiguous

The relevant term, "underlying tax liability", is clear and
unambiguous and is read easily to mean the tax liability
underlying the proposed levy.  The beginning and end of our
inquiry, therefore, must be the statutory text, and we must apply
the plain meaning of that text.  TVA v. Hill, 437 U.S. 153, 185
n.29 (1978); United States v. Am. Trucking Associations, 310 U.S.
534, 543 (1940).  Only when text is "inescapably ambiguous" may
we resort to the legislative history to discern its meaning.
Garcia v. United States, 469 U.S. 70, 76 n.3 (1984).  The meaning
of the relevant term is not inescapably ambiguous.  Whereas
respondent essentially reads the relevant term to mean
"underlying tax deficiency", Congress obviously knew how to use
the word "deficiency" and presumably would have used that word in
the relevant term had it intended the reading advocated by
respondent.

### 2.  Legislative History Supports the Majority Opinion

Even if we were permitted to consult the legislative history
of section 6330(c)(2) to discern the meaning of the relevant
term, the legislative history supports interpreting the term in
accordance with its plain meaning.  The history to section 6330,

as stated in the committee reports and as discerned from the setting in which that section was enacted, reveals that Congress intended that a taxpayer be allowed under that section to dispute a tax liability underlying a proposed levy whenever the taxpayer did not have a prior opportunity to dispute that liability either through the receipt of a notice of deficiency or otherwise.

The enactment of section 6330 followed more than a year of Congressional investigations and hearings over the future of the Internal Revenue Service (IRS), resulting in highly publicized criticisms of the agency's collection methods. Mesa Oil, Inc. v. United States, 86 AFTR 2d 2000-7312, 2001-1 USTC par. 50,130 (D. Colo. 2000). We know from the Senate report that the Senate Finance Committee intended that section 6330 would establish "formal procedures designed to insure due process where the IRS seeks to collect taxes by levy". S. Rept. 105-174, at 67 (1998), 1998-3 C.B. 537, 603. We also know from that report that the committee believed that the addition of section 6330 would afford to taxpayers in dealing with the IRS rights which were similar to the rights afforded to all persons in dealing with any other creditor. S. Rept. 105-174, supra at 67, 1998-3 C.B. at 603. To this end, the committee declared, the Commissioner would by virtue of section 6330 need henceforth to "afford taxpayers adequate notice of collection activity and a meaningful hearing

before the IRS deprives them of their property." Id. The committee believed that these procedures would "increase fairness to taxpayers." Id.

The history of section 6330(c)(2) also reveals that the Administration had during the legislative process voiced its concern to two Members of Congress that the relevant term included self-assessed liabilities and that those liabilities should not be included within the breadth of that section. See letter from L. Anthony Sutin, Acting Assistant Attorney General, to the Hon. William V. Roth, Jr., Chairman, Committee on Finance, U.S. Senate, and the Hon. William Archer, Chairman, Committee on Ways and Means, U.S. House of Representatives (June 8, 1998), reprinted in Tax Notes Today, 98 TNT 112-41 (June 11, 1998); letter from Robert E. Rubin, Secretary of the Treasury, to the Hon. William Archer, Chairman, Committee on Ways and Means, U.S. House of Representatives (June 2, 1998), reprinted in Tax Notes Today, 98 TNT 112-40 (June 11, 1998); cf. Statement of Administration Policy, Office of Management and Budget (May 5, 1998), reprinted in Tax Notes Today, 98 TNT 87-18 (May 6, 1998). The Administration wrote those letters after the Senate passed the Senate's version of section 6330, H.R. 2676, sec. 3401(b), 105th Cong., 2d Sess. (May 5, 1998), but before the conference committee amended that version to read as enacted. The conferees, however, opted not to change the relevant term to

address the Administration's stated concern.  The Senate version of section 6330(c)(2), see id., 144 Cong. Rec. S4163 (daily ed. May 4, 1998), provided (emphasis added):

> SEC. 6330(c)(2).  Issues at hearing.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
>> (A) <u>challenges to the underlying tax liability as to existence and amount</u>.
>>
>> (B) appropriate spousal defenses,
>>
>> (C) challenges to the appropriateness of collection actions, and
>>
>> (D) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

Section 6330 as enacted provided (emphasis added):

> SEC. 6330(c)(2).  Issues at hearing.
>
> (A) In general.  The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including
>
>> (i) appropriate spousal defenses;
>>
>> (ii) challenges to the appropriateness of collection actions; and
>>
>> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
> (B) Underlying liability.  <u>The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability</u>.

As to the emphasized language, the conference report states:

> The conference agreement includes a modified form of the Senate amendment.  The IRS would be required to provide the taxpayer with a "Notice of Intent to Levy," formally stating its intention to collect a <u>tax liability</u> by levy against the taxpayer's property or rights to property.  * * *
>
> * * *  In general, any issue that is relevant to the appropriateness of the proposed collection against the taxpayer can be raised at the pre-levy hearing.  For example, the taxpayer can request innocent spouse status, make an offer-in-compromise, request an installment agreement or suggest which assets should be used to satisfy the tax liability.  However, the validity of the <u>tax liability</u> can be challenged only if the taxpayer did not actually receive the statutory notice of deficiency or has not otherwise had an opportunity to dispute the liability. [H. Conf. Rept. 105-599, at 265 (1998), 1998-3 C.B. 1019; emphasis added.]

The conferees' use of the term "tax liability" in both places is consistent with a plain meaning application and is inconsistent with the position taken by respondent in this case.

FOLEY, <u>J</u>., agrees with this concurring opinion.

GALE, J., concurring:  I agree with result reached by the majority.  I write separately to address respondent's contention that the legislative history supports an interpretation of section 6330(c)(2)(B) that precludes a taxpayer's ability to dispute a tax liability reported on the return (a self-reported or "self-assessed" liability) in a section 6330 proceeding.

Assuming that the language of section 6330(c)(2)(B) contains sufficient ambiguity to justify resort to the legislative history, that history offers little support for respondent's position and indeed suggests the contrary.

Section 6330 originated in section 3401 of the Senate version of H.R. 2676, the bill that, after amendment, was enacted as the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 747.  The predecessor of section 6330(c)(2)(B) in the Senate version provided without limitation that a taxpayer could raise in a section 6330 proceeding "challenges to the underlying tax liability as to existence or amount".  H.R. 2676, sec. 3401(b), 105th Cong., 2d Sess. (1998), 144 Cong. Rec. S4163 (daily ed. May 4, 1998).

The expansive Senate version provoked a critical response from the Treasury Department and other representatives of the executive branch concerned with its overbreadth.  An OMB Statement of Administration Policy issued after the Senate Finance Committee reported the Senate version, and a letter from

the Treasury Secretary sent to the Chairman of the House Ways & Means Committee (after Senate passage, with respect to the House-Senate conference on the legislation), both identified two principal concerns of overbreadth; namely, that under the Senate version a taxpayer could dispute, in a section 6330 proceeding, (i) tax liabilities that had been previously litigated or (ii) tax liabilities that had been self-assessed.  See Statement of Administration Policy, Executive Office of the President (Office of Management and Budget), on H.R. 2676 – Internal Revenue Service Restructuring and Reform Act (Reported by the Senate Committee on Finance)(May 5, 1998),[1] reprinted in Tax Notes Today, 98 TNT 87-18 (May 6, 1998); letter from Robert E. Rubin, Secretary of the Treasury to William Archer, Chairman, Committee

---

[1] The OMB Statement of Administration Policy states:

However, some of the new procedural provisions in the reported bill may unintentionally make it easier for noncompliant taxpayers to avoid paying their fair share of taxes.  For example, the bill would allow additional appeals and court challenges before the IRS can collect tax from a taxpayer who refuses to pay, <u>even if the taxpayer has voluntarily self-assessed the amount due or a court has held that the taxpayer owes the tax</u>. [Emphasis added.]

on Ways & Means, U.S. House of Representatives (June 2, 1998),[2]

reprinted in Tax Notes Today, 98 TNT 112-40 (June 11, 1998).

The final version of the legislation devised by the conference committee added the following (emphasized) limiting language in section 6330(c)(2)(B):

SEC. 6330(c)(2).  Issues at hearing.

\*      \*      \*      \*      \*      \*      \*

(B) Underlying liability.  The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period <u>if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability</u>. [Emphasis added.]

I would submit that it is clear that the conferees, in adding this limiting language to the statute, intended to address the expressed concern about a taxpayer's ability to dispute previously litigated tax liabilities in a section 6330 proceeding.  The new language is directed specifically at a taxpayer's previous opportunities for dispute, either by having been afforded an opportunity for a deficiency proceeding or

---

[2] Treasury Secretary Rubin's letter states:

The Senate bill provides taxpayers with additional advance notification and appeal rights prior to levy \* \* \*.  \* \* \* <u>The appeal right in levy cases would enable taxpayers to litigate the same tax liability repeatedly</u> \* \* \*.  <u>The provision would change the entire collections process, including the process for many taxpayers who have self-assessed their tax liability but not paid in full</u> \* \* \*. [Emphasis added.]

otherwise (as, for example, in the case of taxes not eligible for deficiency proceedings). But one cannot as readily infer from the statutory modifications an intention to foreclose consideration of self-assessed liabilities in a section 6330 proceeding. The report of the conference committee is similarly opaque, lacking any specific indication that the conferees intended to address the concern expressed about allowing taxpayers to dispute self-assessed liabilities in a section 6330 proceeding. The only reference in the report to the newly added limiting language of the statute is a single sentence that closely tracks the statute.

> In general, any issue that is relevant to the appropriateness of the proposed collection against the taxpayer can be raised at the pre-levy hearing. * * * However, the validity of the tax liability can be challenged only if the taxpayer did not actually receive the statutory notice of deficiency or has not otherwise had an opportunity to dispute the liability. [H. Conf. Rept. 105-599, at 265 (1998), 1998-3 C.B. 747, 1019; emphasis added.]

These aspects of the legislative history, rather than offering any support for respondent's position, give rise to a negative inference concerning Congress's intention to foreclose review of self-assessed liabilities in section 6330 proceedings. Having been advised of the executive branch's concern about allowing taxpayers to dispute self-assessed liabilities in section 6330 proceedings, the conferees' failure to refer to self-assessed amounts when modifying the provision at issue, in

either the statute itself or the conference report, suggests that they chose not to address this particular concern.

SWIFT, LARO, FOLEY, MARVEL, and WHERRY, JJ., agree with this concurring opinion.

MARVEL, J., concurring:  I agree with the majority that respondent's motion for summary judgment must be denied in this case.  There are several reasons for doing so, including the reasons set forth in the majority opinion.  I believe, however, that the facts of this case raise a serious factual issue as to whether the taxpayers received the hearing mandated by section 6330, and on this ground alone, I would deny respondent's motion.

The majority opinion states that, on April 18, 2002, petitioners submitted a request for an administrative hearing. In the letter accompanying the request, petitioners' representative advised the Internal Revenue Service that petitioners intended to file an amended income tax return to "more appropriately report the exercise of the incentive and nonqualified stock options" that gave rise to petitioners' unpaid tax liability for 2000.  Petitioners' representative also challenged the appropriateness of the proposed levy, indicated that the levy would cause irreparable harm to petititoners, and stated that there were reasonable collection alternatives. Appeals Officer Johnson had a conversation with petitioners' representative on July 22, 2002, in which he agreed that petitioners would be permitted to submit the amended return, but he did not set any deadline for doing so.  On September 26, 2002, without any further notice to petitioners and apparently without holding the required hearing, the Appeals Office issued to

petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.

These facts raise a material issue of fact regarding whether or not petitioners received the hearing to which they were entitled under section 6330. Section 6330 requires that a taxpayer who timely requests a hearing receive a hearing. In this case, petitioners were not only challenging the underlying tax liability, but they were also challenging the reasonableness of the proposed levy and had clearly stated their desire to explore collection alternatives at the section 6330 hearing. The issuance of the notice of determination without any warning to petitioners and without any hearing deprived petitioners of the opportunity to present, and receive a determination on, all relevant issues as required by section 6330(c)(2) and (3).

If, instead of precipitously issuing the notice of determination, the Appeals Office had notified petitioners that it was rescheduling the hearing that was originally scheduled for July 25, 2002, petitioners would have had fair warning and could have prepared to present all of their issues at the hearing, including those related to the underlying tax liability. As it turned out, petitioners submitted their amended return, reflecting that they were due a refund of $519,087, on October 11, 2002.

Taxpayers who assert that they intend to file an amended

return for the first time in connection with a hearing under section 6320 or 6330 should not take solace from the majority opinion. The majority opinion addresses a case in which the petitioners apparently demonstrated to the Appeals Office that they were serious about filing an amended return and that they had substantial reasons for doing so, because the Appeals Office agreed to give petitioners time to file their amended return. A taxpayer who procrastinates and seeks to rely solely on his announced intention to file an amended return as a defense to a proposed levy or lien in a section 6320/6330 hearing or in a section 6320/6330 proceeding before this Court proceeds at his peril as his undocumented intention is not likely to be viewed as a credible challenge to the underlying tax liability.

HAINES, GOEKE, and WHERRY, <u>JJ</u>., agree with this concurring opinion.

GOEKE, J., concurring in result:  I agree with the result reached by the majority and its interpretation of the term "underlying tax liability".  I write separately to clarify the significance of petitioners' amended return.

Under section 6330(c)(2)(B), petitioners were permitted to raise at the hearing challenges to the existence or amount of their underlying tax liability.  Petitioners raised a challenge to the amount of their underlying liability and the parties agreed that petitioners would be permitted to submit an amended return reflecting their position.  The Appeals officer abruptly issued the notice of determination.  Petitioners subsequently submitted an amended return.  I believe that if petitioners had been given a reasonable opportunity to challenge the amount of their underlying liability during the hearing process (e.g., by filing an amended return) and they had failed to do so, then we should not review the underlying tax liability because it was not properly raised at the hearing, but in this case they were not given the opportunity to challenge their underlying liability, so the hearing was inadequate.

This situation is analogous to offers in compromise (OIC). Before an OIC can be considered, the taxpayer must submit current financial information.  Moorhous v. Commissioner, T.C. Memo. 2003-183; see also Rodriguez v. Commissioner, T.C. Memo. 2003-153 (finding that the Appeals officer did not abuse his discretion in

not considering OIC where all required returns had not been filed). Without this information, the Appeals officer cannot properly consider the OIC. Likewise, a taxpayer desiring to challenge the existence or amount of the underlying tax liability who has not previously filed an amended return should generally be required to file an amended return in conjunction with the hearing if such amended return is requested by the Appeals officer in order to satisfy the requirement that the liability be at issue at the hearing.

Although petitioners' amended return reflects that they are due a refund of $519,087, I do not interpret the majority as implying that we have the authority to order a refund if petitioners establish that they have overpaid their 2000 taxes. Our jurisdiction under section 6330 is limited to deciding whether respondent can proceed with the proposed collection action. Accordingly, we would need only decide whether petitioners' 2000 tax liability is equal to or less than the amount they previously paid for the year.

HAINES and WHERRY, <u>JJ</u>., agree with this concurring opinion.

GERBER, J., dissenting: With due respect, I dissent from the holding of the majority. I agree that the majority's literal reading of the phrase, "underlying tax liability", is one possible way to interpret that phrase. It is my view, however, that the phrase "underlying tax liability", when considered in the context of section 6330 and specifically in context of section 6330(c)(2)(B), could also be read to not include a tax liability that a taxpayer has reported and admitted was owing.

The intent of the statute was to give a taxpayer the right to challenge the "underlying tax liability * * * if the [taxpayer] * * * <u>did not otherwise have an opportunity to dispute such tax liability</u>." Sec. 6330(c)(2)(B)(emphasis added). That phrase should not be interpreted to mean that a person could contest their own judgment as to the correct tax. The opportunity to contest tax liabilities is, without exception, granted by statute.[1] If a person files a tax return and self-assesses or admits to owing a tax liability, but fails to pay the admitted liability, the statutory opportunity to contest such liability has traditionally been through a refund suit.[2]

---

[1] It is well established that the United States is immune from suit except where Congress by specific statute has waived its sovereign immunity. See, e.g., <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).

[2] We must distinguish the circumstances we consider from deficiency proceedings where we have authority to consider overpayments. See sec. 6512(b). A proceeding under section 6330

(continued...)

Normally, with respect to an income tax liability, the right to sue for a refund requires full payment of the disputed liability. Under the majority's reading of section 6330(c)(2)(B), there would be no such requirement for payment prior to being able to contest the underlying merits of a self-assessed amount in the context of a section 6330 hearing before this Court.

The majority's interpretation results in a dramatic and improbable change from more than 75 years of established tax litigation procedure and precedent. If Congress had intended such a dramatic change, it certainly would have made some reference or modification to the existing statutory framework for refund claims and/or suits.

Finally, I find it inconceivable that Congress intended that taxpayers who filed returns admitting that they owed tax are to be given the opportunity to contest their own "assessment" of the tax due, when the respondent seeks to collect it. It is my view that Congress intended to ensure that taxpayers had certain rights with respect to the collection process and to permit them to contest any changes respondent proposed,[3] if they had not already had the opportunity to do so.

CHIECHI, J., agrees with this dissenting opinion.

---

[2](...continued) is not a deficiency proceeding.

[3] Including respondent's proposed changes from a taxpayer's self-assessed tax liability.

HALPERN, _J._, dissenting:

I. _Introduction_

I cannot agree with the majority that the term "underlying tax liability", as used in section 6330(c)(2)(B), is to be interpreted "as a reference to the amounts that the Commissioner assessed for a particular tax period." Majority op. p. 11. What I believe to be a mistaken interpretation of the term leads the majority to a "plain language" reading of section 6330(c)(2)(B) that would allow a taxpayer, at a section 6330 hearing, to challenge the Government's right to collect from her the portion of any tax that she had reported but failed to pay.

The meaning of the term "underlying tax liability" in section 6330(c)(2)(B) is ambiguous. Because it is ambiguous, we are entitled to examine extrinsic evidence to discern its meaning. The legislative history of section 6330(c)(2)(B) leads me to agree with respondent that, as used in that section, the term "underlying tax liability" refers to liabilities asserted by the Commissioner that differ in amount from liabilities self-assessed by the taxpayer.[1] I conclude, therefore, that, at a section 6330 hearing, a taxpayer may not challenge the Government's right to collect from her any reported but unpaid tax. For the reasons stated, I dissent.

---

[1] The term "self-assessed" is somewhat of a misnomer in that tax reported on a return is actually assessed by the Commissioner. See sec. 6201(a)(1). I use the term in the colloquial sense.

II.  Section 301.6330-1(e), Proced. & Admin. Regs.

Before proceeding, it is necessary to comment on the majority's disposition of section 301.6330-1(e), Proced. & Admin. Regs., set forth in pertinent part on page 9 of the majority's opinion.  Subsection (e)(1) of that regulation states quite clearly that, at a section 6330 (Collection Due Process (CDP) hearing), the taxpayer "may raise challenges to the existence or amount of the tax liability specified on the CDP Notice * * * if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute that tax liability."  (Emphasis added.)  See also subsection (e)(3), Q&A-E2 (similar).[2]  The pertinent language of subsection (e)(1) of the regulation is essentially the same as the language of section 6330(c)(2)(B) except that, in the regulation, the term "tax liability specified on the CDP Notice" is substituted for the term "underlying tax liability".  Thus, the drafters of the regulation fixed the meaning of the term "underlying tax liability" as "the tax liability specified on the CDP Notice".

As the majority recites, on March 19, 2002, respondent issued to petitioners a final notice (CDP notice) stating that petitioners owed tax, penalties, and interest (for 2002) totaling

[2]  Sec. 301.6320-1(e)(1), (3), Q&A-E2, Proced. & Admin. Regs., is similar but relates to liens rather than levies.

$222,315.34. Majority op. p. 3. The dispute here is over whether petitioners could challenge respondent's right to collect that debt (or at least the tax portion of it) at the section 6330 hearing they subsequently requested. The regulations under section 6330(c)(2)(B) cited above appear to be dispositive of that issue in petitioners' favor. Surprisingly, however, neither party mentioned those provisions in their papers or oral argument with respect to respondent's motion for summary judgment, and the majority treats the provisions almost as an afterthought, proceeding to consider whether the term "underlying tax liability" means something quite different than the meaning given the term in the regulations. If respondent's position in this case is that the term "underlying tax liability" means liabilities in excess of self-assessed liabilities, then that position is directly contradicted by the meaning fixed for that term in the regulations; i.e., "the tax liability specified on the CDP Notice". The majority has not even asked respondent to explain that contradiction. To me, the best course would be to ask respondent to explain the contradiction and, perhaps, say: "Oops!"[3] As a matter of judicial economy, we should attempt to

---

[3] Recently, by Chief Counsel Notice (CC-2002-043), reprinted in Tax Notes Today, 2002 TNT 206-13, attorneys working in the Office of Chief Counsel, Internal Revenue Service, were reminded that the office does not take positions in litigation that are inconsistent with positions that the Commissioner has taken in published guidance, including regulations.

resolve the dispute in front of us on the basis of section 301.6330-1(e), Proced. & Admin. Regs., if at all possible.

I continue with my dissent because the ambiguity that afflicts the statute also afflicts the regulation, and respondent may say "Oops!" only because the regulation does not say what he wants it to say, and the Secretary may try to amend it, in which case the majority's analysis becomes relevant.

III.   Section 6330

   A.   Introduction

The majority adequately describes the general operation of section 6330.  Majority op. pp. 7-8.  Putting aside section 301.6330-1(e), Proced. & Admin. Regs., the question presented is whether respondent's Appeals Office could, pursuant to section 6330(c)(2)(B), refuse to allow petitioners to challenge their obligation to pay the amount of tax that they had reported but not paid (the unpaid tax).[4]  It is clear (and respondent does not suggest otherwise) that petitioners did not receive a statutory notice of deficiency with respect to the unpaid tax.[5]  Nor does

---

[4]  Generally, when a return of tax is made and an amount of tax is shown on the return, the person making the return shall, without assessment or notice and demand, pay such tax at the time and place the return is filed.  Sec. 6151(a).

[5]  As used in sec. 6330(c)(2)(B), the term "statutory notice of deficiency" refers to the means by which, in the case of certain taxes (including the income tax), the IRS notifies a person that it has determined a deficiency in that person's tax. See sec. 6212.  In the context of those taxes, the term

(continued...)

respondent argue that petitioners otherwise had an opportunity to dispute the unpaid tax within the meaning of section 6330(c)(2)(B).[6]  Rather, respondent's contention that petitioners' obligation to pay the unpaid tax is not properly at issue is based on his position that, as used in section 6330(c)(2)(B), the term "underlying tax liability" is properly interpreted to refer only to amounts asserted by the Internal Revenue Service (IRS) in excess of the amount of tax reported by the taxpayer on her return.  In the context of the income tax, that amount would generally correspond to the amount of any deficiency assessed by the Commissioner and would exclude any amount of self-assessed tax (such as the unpaid tax here in issue).  As previously discussed, the majority interprets the term "underlying tax liability" in section 6330(c)(2)(B) to mean "the amounts that the Commissioner assessed for a particular tax

---

[5](...continued)
"deficiency" essentially means the amount by which a person's tax liability exceeds the tax shown on the person's return.  See sec. 6211(a).

[6]  Respondent's regulations provide:  "An opportunity to dispute a liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability."  Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.  Without regard to sec. 6330(c)(2)(B), a taxpayer's subsequent disavowal of a reported and assessed, but unpaid, income tax liability amounts to an informal claim for abatement.  See Fayeghi v. Commissioner, T.C. Memo. 1998-297, affd. 211 F.3d 504 (9th Cir. 2000).  Because such a claim has no formal procedural significance, see sec. 6404(b), presumably it is not subject to the Appeals process.

period" (sometimes, simply, assessed amounts). Thus, for the majority, in the context of a tax that is subject to the deficiency procedures (such as the income tax), the term "underlying tax liability" means the sum of (1) any self-assessed tax plus (2) any deficiency assessment. Id. pp. 11-12.[7]

I agree with the majority that the term "underlying tax liability" must be interpreted "in context", Id. p. 11, and only add, as stated by the Court of Appeals for the Fifth Circuit:

> However, even apparently plain words, divorced from the context in which they arise and in which their creators intended them to function, may not accurately convey the meaning the creators intended to impart. It is only, therefore, within a context that a word, any word, can communicate an idea.

Leach v. FDIC, 860 F.2d 1266, 1270 (5th Cir. 1988).

B. Language of Section 6330(c)(2)(B)

Section 6330(c)(2)(B) provides:

> (B) Underlying liability. The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory

---

[7] On p. 12, the majority states: "In the present case, petitioners' underlying tax liability consists of the amount that petitioners reported due on their tax return along with statutory interest and penalties." Since petitioners paid a portion of the amount they reported due on their return, it would seem that, for the majority, the term "underlying tax liability" includes both paid and unpaid assessments of tax. The majority does not say whether, under sec. 6330(d)(1), we have the authority to order a refund. I do not see how we do, since our jurisdiction under that section is to review the Commissioner's determination to proceed with collection of a given amount. To the extent that Chief Judge Wells, in his concurring opinion, suggests to the contrary, I disagree.

notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Having determined as a first step that the term "underlying tax liability" means assessed amounts, the majority proceeds as a second step to find the plain meaning of section 6330(c)(2)(B) without adequately considering whether the phrasing of that provision contradicts such meaning. Thus, consider the meaning of section 6330(c)(2)(B) with respect to the following hypothetical taxpayer if, as the majority would have it, the term "underlying tax liability" means assessed amounts. The taxpayer files a return but fails to pay the $100 tax shown on that return, which tax is assessed by the Commissioner (the return assessment). Subsequently, the Commissioner determines that additional tax of $50 is due and sends the taxpayer a notice of deficiency in that amount, which the taxpayer receives and ignores, resulting in a subsequent assessment of $50 (the notice assessment). The taxpayer's total (composite) liability is $150.[8] If, at a section 6330 hearing, the taxpayer attempts to challenge the Commissioner's right to collect the $150 liability, and if the taxpayer's underlying tax liability equates to the assessed amounts, then does not the plain language of section 6330(c)(2)(B) dictate that the taxpayer can challenge both the

---

[8] For an example of a composite liability where the taxpayer did not ignore the notice of deficiency, see Fayeghi v. Commissioner, supra.

return assessment and the notice assessment ($150) (i.e., because the taxpayer did not receive a notice of deficiency "for" the composite liability of $150)?  Yet the majority would reach the opposite conclusion, i.e., the hypothetical taxpayer could challenge neither assessment, on the basis that the hypothetical taxpayer "was afforded a prior opportunity to challenge such [the composite] liability under the deficiency procedures."  Majority op. p. 12.  It is not clear to me how, under the deficiency procedures, a taxpayer can challenge a return assessment that she has not paid.  See, e.g., O'Connor v. Commissioner, T.C. Memo. 1992-410 (Tax Court cannot enter a decision determining an overpayment of assessed tax where the assessed tax has not been paid; section 6404(b) forestalls forced abatement of any assessed income tax, and "we know of no basis upon which we could hold that petitioner is entitled to credits for any amounts assessed but not paid").

Alternatively, the majority could stick with its interpretation of the term "underlying tax liability" as assessed amounts and interpret the term "if" in section 6330(c)(2)(B) to mean "to the extent".[9]  That, however, would be an abandonment of

---

[9]  Viz, "The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period to the extent [as opposed to "if"] the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."

its "plain language" claim.

Finally, the majority might decide that the meaning of the term "underlying tax liability" is not fixed; i.e., it does not always mean <u>all</u> assessed amounts. Thus, e.g., in the case of a composite liability, the underlying tax liability might be exclusive of the deficiency if the deficiency was the subject of a notice assessment (or the taxpayer otherwise had an opportunity to dispute the deficiency[10]) and inclusive of the deficiency in all other instances. Under that argument, in the example used above, the underlying tax liability would be $100, since the deficiency of $50 was the subject of a notice assessment. If, instead, the taxpayer had not received the notice of deficiency and did not otherwise have an opportunity to dispute the deficiency, then the underlying tax liability would be $150. The result under that alternative approach is similar to the result reached under respondent's interpretation in that (at least in some circumstances) the term "underlying tax liability" means something other than the total assessments made by the

---

[10] A taxpayer would have "otherwise had an opportunity to dispute" (and would therefore be precluded from challenging at a sec. 6330 hearing) such amount without having received a notice of deficiency if, for example, following the Commissioner's examination of her income tax return and determination of a deficiency in tax, the taxpayer had executed a waiver of restrictions on assessment and collection, thus making it unnecessary for the Commissioner to mail to her a notice of deficiency. See <u>Aquirre v. Commissioner</u>, 117 T.C. 324, 327 (2001).

Commissioner for the taxable period.  From a "plain meaning" standpoint, such a reading of the statute would seem to be no more preferable than respondent's interpretation.  Indeed, the benefit of respondent's interpretation (i.e., that the term "underlying tax liability" in section 6330(c)(2)(B) refers only to that portion of the underlying tax liability that the taxpayer failed to report) is that it does not in most cases require mental gymnastics to square such term with the remaining language of the section.[11]

Based on the foregoing, I am satisfied that the term "underlying tax liability", as used in section 6330(c)(2)(B), is susceptible to more than one reasonable interpretation.[12]  We may therefore look beyond the language of the provision in our endeavor to discern Congress's purpose.

---

[11]  Of course, if it turns out that respondent's interpretation is actually that the term equates to "the tax liability specified on the CDP Notice" (which is the term used in sec. 301.6330-1(e)(1), (3), Proced. & Admin. Regs.), then such interpretation presents similar ambiguities to those discussed in the text.

[12]  In Washington v. Commissioner, 120 T.C. 114, 127 (2003) (Halpern, J., concurring), without benefit of a consideration of the legislative history discussed below, I concluded that the term "underlying tax liability", as used in sec. 6330(c)(2)(B), means the tax on which the Commissioner based his assessment (whether shown on the return or determined by the Commissioner). I have since changed my mind.

C.  Extrinsic Interpretive Aids

   1.  Use of the Term Elsewhere in the Section

Besides appearing in section 6330(c)(2)(B), the term

"underlying tax liability" appears in section 6330(d)(1).[13]

Section 6330(d)(1) provides:

> SEC. 6330(d)(1). Judicial Review of Determination.
> -- The person [the subject of a section 6330
> determination] may, within 30 days of a determination
> under this section, appeal such determination --
>
>    (A) to the Tax Court (and the Tax Court shall
> have jurisdiction with respect to such matter); or
>
>    (B) if the Tax Court does not have
> jurisdiction of the underlying tax liability, to a
> district court of the United States.

We have interpreted section 6330(d)(1) to mean that we have

jurisdiction in section 6330 cases involving the types of taxes,

e.g., income, estate, and gift taxes, that we normally may

consider, regardless of whether the section 6330 case in front of

us involves a deficiency in such taxes.  See Landry v.

Commissioner, 116 T.C. 60, 62 (2001).  Under that interpretation,

the term "underlying tax liability" means "the type of tax at

issue".[14]  Neither petitioner nor respondent argues for that

---

[13]  As pertinent to this proceeding, both provisions
originated with the addition of sec. 6330 to the Internal Revenue
Code by the Internal Revenue Service Restructuring and Reform Act
of 1998, Pub. L. 105-206, sec. 3401(b), 112 Stat. 747.

[14]  In Katz v. Commissioner, 115 T.C. 329, 339 (2000), we
interpreted the term "underlying tax liability" in sec.
6330(d)(1)(B) as including "any amounts owed by a taxpayer
                                              (continued...)

meaning in this case; indeed, such interpretation makes little sense in the context of section 6330(c)(2)(B).  Accordingly, we cannot resolve this case on the basis of the meaning of the term "underlying tax liability" as used in section 6330(d)(1)(B) (which, in any event, the majority does not mention).[15]

   2.  Legislative History of Section 6330(c)(2)(B)

Section 6330 was added to the Internal Revenue Code by the Internal Revenue Service Restructuring and Reform Act of 1998 (the Act), Pub. L. 105-206, sec. 3401(b), 112 Stat. 747.  H.R. 2676, 105th Cong., 2d Sess. (1998) (H.R. 2676), is the bill that, when enacted, became the Act.  As passed by the House of Representatives, H.R. 2676 did not contain any version of section 6330.  Section 6330 was added by a Senate amendment to H.R. 2676 (the Senate amendment).  See H.R. 2676, sec. 3401(b), 105th

---

[14](...continued)
pursuant to the tax laws".  As that statement was not necessary to resolve the case (the case did not involve self-assessed amounts), it is dicta that does not control this case.

[15]  The term "underlying tax liability" also appears in sec. 6311, which deals with the payment of taxes by commercially acceptable means.  In relevant part, sec. 6311(d)(3)(A) provides that "a payment of internal revenue taxes * * * by use of a credit card shall not be subject to section 161 of the Truth in Lending Act * * * if the error alleged by the person is an error relating to the underlying tax liability".  Sec. 6311(d)(3)(B) provides a similar rule with respect to payments made by debit cards.  Those provisions were added to the Internal Revenue Code by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1205(a), 111 Stat. 995.  It is by no means apparent that Congress intended the same meaning to apply for purposes of sec. 6311(d)(3) and sec. 6330(c)(2)(B).

Cong., 2d Sess. (1998), 144 Cong. Rec. S4163 (daily ed. May 4, 1998).  The Senate amendment provides without qualification that, at a CDP hearing, taxpayers can raise "challenges to the underlying tax liability as to existence or amount".  Id.  In response to the Senate amendment, Administration officials expressed concern over the breadth of the proposed appeal rights, noting, among other concerns, that, under the Senate amendment, taxpayers could challenge even self-assessed (i.e., reported) amounts at CDP hearings.  See Statement of Administration Policy, Office of Management and Budget (May 5, 1998), reprinted in Tax Notes Today, 98 TNT 87-18 (May 6, 1998); letter from the Hon. Robert E. Rubin, Secretary of the Treasury, to the Hon. William Archer, Chairman, Committee on Ways and Means, U.S. House of Representatives (June 2, 1998), reprinted in Daily Tax Report, 112 DTR at L-3 (June 11, 1998) (Department of Treasury views).[16]

The limiting language found in section 6330(c)(2)(B) originated in the conference agreement on H.R. 2676.  While the accompanying committee report (the conference report), H. Conf. Rept. 105-599, at 265-266 (1998), 1998-3 C.B. 747, 1019-1020, reveals neither the impetus for, nor the intended effect of, the

---

[16] See also letter from L. Anthony Sutin, Acting Assistant Attorney General, to the Hon. William V. Roth, Jr., Chairman, Committee on Finance, U.S. Senate, and the Hon. William Archer, Chairman, Committee on Ways and Means, U.S. House of Representatives (June 8, 1998), reprinted in Daily Tax Report, 112 DTR at L-7 (June 11, 1998) (Department of Justice views).

change to the Senate amendment reflected in section 6330(c)(2)(B), it is reasonable to infer that the conferees were responding, at least in part, to the stated concerns of Administration officials and did not intend the result reached by the majority.

The foregoing inference is supported by other language in the conference report. Regarding the scope of the section 6330 hearing, the report provides: "However, the validity of the tax liability can be challenged only if the taxpayer did not actually receive the statutory notice of deficiency or has not otherwise had an opportunity to dispute the liability." Id. at 265, 1998-3 C.B. at 1019 (emphasis added). That language suggests that Congress did not intend to allow challenges to the Commissioner's right to collect the unpaid tax liability in those instances in which the taxpayer's nonreceipt of a statutory notice of deficiency is solely attributable to the fact that the Commissioner did not determine a deficiency in the first place. Rather, the reference to "actual" receipt of "the" notice of deficiency suggests that, in the case of taxes subject to the deficiency procedures, such as the income tax, Congress was targeting the situation in which, although the Commissioner determined a deficiency and properly issued a statutory notice of deficiency, the taxpayer did not actually (or constructively, see Sego v. Commissioner, 114 T.C. 604, 611 (2000)) receive that

notice[17] and therefore did not have a realistic opportunity to challenge the proposed deficiency in the Tax Court.[18]  That interpretation is consistent with respondent's position that the term "underlying tax liability", as used in section 6330(c)(2)(B), does not include self-assessed amounts.

IV.  Conclusion

I conclude that section 6330(c)(2)(B), describing the limited circumstances in which a taxpayer may challenge the existence or amount of the underlying tax liability at a section 6330 hearing, does not allow the taxpayer to challenge her obligation to pay any reported but unpaid tax.[19]  Accordingly,

[17]  In informal remarks, one Treasury official specifically identified that situation as the proper focus of any expanded appeal rights.  See Holmes, "Proposed Taxpayer Rights Changes Questioned by Treasury Attorney Rizek", 74 Daily Tax Rept. at G-3 (Apr. 17, 1998); see also Donmoyer, "Treasury Still Ignoring IRS Reform Bill's Controversial Elements," 78 Tax Notes 411 (describing Associate Tax Legislative Counsel Rizek as "one of Treasury's chief negotiators during the drafting of the IRS reform bill").

[18]  A notice of deficiency mailed to a taxpayer's "last known address" is sufficient to commence the usual 90-day period during which the taxpayer may petition the Tax Court for a redetermination of the deficiency, regardless of whether the taxpayer actually receives the notice.  See, e.g., Frieling v. Commissioner, 81 T.C. 42, 52 (1983); Tatum v. Commissioner, T.C. Memo. 2003-115 n.4; see also sec. 6212(b); sec. 301.6212-2, Proced. & Admin. Regs.

[19]  I acknowledge that such conclusion is at odds with dicta appearing in prior reports of the Court, which reflect concessions made by the Commissioner.  See Craig v. Commissioner, 119 T.C. 252, 261 (2002) (Commissioner conceded that taxpayer was entitled to dispute self-assessed liability at CDP hearing);
(continued...)

putting aside section 301.6330-1(e)(1), (3), Proced. & Admin.

Regs., the reported but unpaid tax here in question is not

properly at issue.[20]

---

[19](...continued)
Hoffman v. Commissioner, 119 T.C. 140, 145 (2002) (same in the context of interest and penalties attributable to a self-assessed liability).

[20] That is not to say that, at a sec. 6330 hearing, a taxpayer may not show that she has no liability (or a reduced liability) for a deficiency properly before the Appeals Office pursuant to sec. 6330(c)(2)(B) on account of erroneous items on her return (or, indeed, items, e.g., overlooked deductions, not on her return). The question is whether, during a sec. 6330 hearing, a taxpayer has the right to challenge her obligation to pay any amount shown on her return but remaining unpaid (she does not). The absence of such a right, however, does not foreclose the taxpayer from submitting an amended return or, upon payment, filing a claim for refund.

CHIECHI, J., dissenting in part and concurring in part:  I
dissent from the holding and rationale of the majority opinion.
I concur with the majority opinion only to the extent that the
majority opinion results in allowing petitioners to challenge the
existence or the amount of the tax liability specified in the
final notice--notice of intent to levy and notice of your right
to a hearing (notice of intent to levy) with respect to their
taxable year 2000.[1]  The foregoing result is the only proper
result in the instant case because the following regulations,
which bind respondent, require it:

> (e) Matters considered at CDP hearing--(1) In
> general. * * * The taxpayer also may raise challenges
> to the existence or amount of the tax liability
> specified on the CDP Notice for any tax period shown on
> the CDP Notice if the taxpayer did not receive a
> statutory notice of deficiency for that tax liability
> or did not otherwise have an opportunity to dispute
> that tax liability. * * *

>    *        *        *        *        *        *        *

> (3) Questions and answers.  The questions and
> answers illustrate the provisions of this paragraph (e)
> as follows:

>    *        *        *        *        *        *        *

---

[1]The notice of intent to levy specified that petitioners had
a total tax liability for 2000 of $222,315.34.  That liability
consisted of the tax due, penalties, and interest thereon,
totaling $213,495, which petitioners reported in their Federal
income tax return for 2000 that they filed on or about Oct. 18,
2001, and which respondent assessed, plus any penalties as well
as interest on the total liability accruing after Oct. 18, 2001,
and before Mar. 19, 2002, the date on which respondent issued the
notice of intent to levy with respect to petitioners' taxable
year 2000.

Q-E2.  When is a taxpayer entitled to challenge the existence or amount of <u>the tax liability specified in the CDP Notice</u>?

A-E2.  A taxpayer is entitled to challenge the existence or amount of <u>the tax liability specified in the CDP Notice</u> if the taxpayer did not receive a statutory notice of deficiency <u>for such liability</u> or did not otherwise have an opportunity to dispute <u>such liability</u>. * * *  [Sec. 301.6330-1(e)(1), (3) Q&A-E2, Proced. & Admin. Regs.; emphasis added.]

HOLMES, <u>J</u>., agrees with this dissenting in part and concurring in part opinion.