T.C. Memo. 2004-208

UNITED STATES TAX COURT

ROBERT NEWSTAT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16989-02L.      Filed September 16, 2004.

        P filed a petition for judicial review pursuant to
sec. 6330, I.R.C., in response to a determination by R
that levy action is appropriate for the taxable years
1985 and 1999.

        <u>Held</u>:  With respect to 1985, R's determination to
proceed with collection action is sustained.  With
respect to 1999, the case is remanded for further
consideration by the Internal Revenue Service Office of
Appeals.

Robert Newstat, pro se.

<u>Jack T. Anagnostis</u>, for respondent.

MEMORANDUM OPINION

WHERRY, Judge:  This case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1]  The issue for decision is whether respondent may proceed with collection as so determined.

## Background

This case was submitted fully stipulated pursuant to Rule 122.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

Petitioner requested and obtained extensions of time until October 15, 1986, to file his 1985 Form 1040, U.S. Individual Income Tax Return.  On that date, petitioner filed his 1985 return reporting total tax of $187,911; total payments, through withholding, of $66,747; and an amount owed of $127,151.[2]  No payment was submitted with the return.  At the time, petitioner was involved in a pending bankruptcy, which he had filed in May or June of 1986.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The parties have stipulated that the amount owed should have been $121,164, calculated by crediting $66,747 against the reported liability of $187,911.  The difference resulted from petitioner's inclusion in the amount owed shown on his return of a $5,987 "penalty" computed by petitioner on the Form 2210, Underpayment of Estimated Tax by Individuals, accompanying his 1985 return.

On November 17, 1986, respondent assessed the total tax shown on petitioner's return, plus additions to tax and interest, and applied the reported payments. Notices of balance due were also sent on November 17 and December 22, 1986. Respondent thereafter examined petitioner's return and on October 14, 1992, issued to petitioner a notice of deficiency with respect to 1985. The notice reflected determinations by respondent of a deficiency based on unreported income and of additions to tax under sections 6653(b) and 6661.

Petitioner filed a petition with this Court disputing respondent's determinations on January 12, 1993, at docket No. 974-93. The case was resolved by entry of a stipulated decision on December 20, 1995. The decision document provided: "That there is no deficiency in income tax due from, nor overpayment due to, the petitioner for the taxable year 1985" and that there were no additions to tax due from petitioner.

On October 6, 1999, respondent issued to petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to, among other liabilities, his Federal income taxes for 1985.[3] As of that date, the amount owed by petitioner for 1985, including additions to tax and interest,

_____

[3] The Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing also reflected trust fund recovery penalties for various quarterly periods in 1982, 1983, and 1986, which are not at issue in this proceeding.

totaled $477,912.76. In response to the notice, petitioner's representative, Douglas A. Fendrick (Mr. Fendrick), timely submitted a Form 12153, Request for a Collection Due Process Hearing, received by respondent on November 4, 1999. The Form 12153 contained the following explanation of petitioner's disagreement with the notice of levy as it pertained to the 1985 liabilities: "Statute of limitation may have expired".

On February 14, 2001, petitioner filed a joint Form 1040 with his wife for the taxable year 1999 reporting a tax liability of $19,748. No prepayments had been made for 1999, nor was any payment submitted with the return. The reported tax liability was assessed on April 2, 2001, along with additions to tax and interest. A notice of balance due was also sent on that date.

Respondent issued to petitioner and his spouse a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing on September 7, 2001, with respect to the 1999 year. The notice reflected a total assessed balance and statutory additions of $29,191.87. In response, a timely Form 12153, signed only by petitioner, was received by respondent on October 9, 2001. Petitioner attached to the Form 12153 an explanation of his disagreement, communicating why he believed the amount requested for payment was incorrect. Petitioner represented that he noted on the 1999 return that: (1) The income reported on the Schedule C, Profit or Loss From Business, for his sole proprietorship was

gross income, not taxable income; (2) the reason for this manner of reporting was that records concerning his business expenses were lost at the time he filed the return; and (3) he would file an amended return when he recovered materials to support Schedule C deductions.  Although petitioner never filed an amended 1999 return, the attachment to his Form 12153 expressed interest in being allowed to make installment payments based on net, rather than gross, income.

Petitioner's collection case for 1985 was assigned to Appeals Officer Joan R. Carter (Ms. Carter), of the Internal Revenue Service (IRS) Office of Appeals in Newark, New Jersey. Following her receipt of the case, Ms. Carter sent a letter dated February 5, 2002, to Mr. Fendrick responding to the concerns expressed in petitioner's Form 12153.  The letter opened with the following statement:  "Since my efforts to contact you by telephone have not been very successful the last few attempts, this letter summarizes how the collection statute expiration date was determined for each of periods listed above."  With respect to 1985, the letter then provided:

| | | |
|---|---|---|
| Assessment Date | 11-17-1986 | |
| Original Collection Statute Date | 11-17-1996 | |
| Bankruptcy Petition TC 520 | 6-9-1986 | |
| Bankruptcy Lifted TC 521 | 9-22-1989 | (Statute Suspended 3yrs. 3mos. 14days) |
| Original Collection Statute Date | 11-17-1996 | |
| Plus: Suspension Period | 3yrs. 3mos. 14days | |
| New Collection Statute Date | 3-23-2000 | |
| Collection Due Process Appeal | 11-8-1999 | (Statute Suspended While in Appeals) |

In closing, the letter stated:

> I have enclosed Form 433-A for Mr. Newstat to complete so that I may evaluate collection alternatives.  Please return completed Form 433-A to me by <u>February 25, 2002.</u>

> In addition, please call me by <u>February 25, 2002</u> at the telephone number shown above to discuss any questions you may have regarding the computation of the collection statute expiration dates and collection alternatives.

Petitioner received a copy of the foregoing letter in mid-March of 2002.

At some point after receipt of the February 5, 2002, letter, Mr. Fendrick advised Ms. Carter by a voice mail message[4] that he no longer represented petitioner, that petitioner was in the process of retaining a new attorney, and that he expected that Ms. Carter would be hearing from the new counsel within 2 weeks. Ms. Carter responded with a letter dated March 28, 2002, sent directly to petitioner and explaining that "Approximately one month has passed since Mr. Fendrick informed me of this change [of representatives], and no one has contacted me on your behalf regarding this matter."  In the letter, the heading of which referenced the 1985 income tax, Ms. Carter scheduled an in-person appointment for April 9, 2002, and advised petitioner that if he did not appear for the meeting or call beforehand to cancel, she

---

[4] An attachment to the Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 gives Mar. 26, 2002, as the date this message was left.  That date, however, is difficult to reconcile with the letter sent by Ms. Carter in response, described <u>infra</u> in text.

would close his case based upon the information available in the case file.

Meanwhile, petitioner had been notified by a letter dated January 2, 2002, that his collection case with respect to 1999 had been assigned to the IRS Office of Appeals in Oklahoma City, Oklahoma, due to a heavy workload in the New Jersey office. The letter informed petitioner that if he preferred a face-to-face conference, his case would be returned to the New Jersey office upon request. By a facsimile sent in early February of 2002, petitioner represented that he had previously communicated such a preference for an in-person hearing and further cited his intention to have a representative appear with him at the meeting. At some point thereafter, not otherwise revealed by the record, petitioner's collection case for 1999 was reassigned to Ms. Carter.

By a letter dated April 2, 2002, Robert W. Lynch (Mr. Lynch) advised Ms. Carter that he had been retained to represent petitioner. His letter referenced the proposed April 9, 2002, appointment and informed Ms. Carter: "Neither Mr. Newstat nor I will be able to attend that day. I will call you after my meeting with Mr. Newstat [when Mr. Lynch would obtain the case file] to discuss this matter in detail, and to reschedule a meeting, if appropriate."

In a subsequent letter to Ms. Carter dated April 22, 2002, Mr. Lynch made a request under the Freedom of Information Act (FOIA) and section 6103 for all records pertaining to the determination of petitioner's 1985, but not 1999, liability. Mr. Lynch asked that the administrative file first be made available at the IRS office in Cherry Hill, New Jersey, in order to determine which documents should be copied, and that collection action "remain suspended pending production of the requested documents and our meeting." Mr. Lynch also enclosed with the letter a Form 2848, Power of Attorney and Declaration of Representative, authorizing his representation of petitioner regarding income taxes from Form 1040 for the years 1985, 1999, and 2000.[5]

Thereafter, by a letter dated April 24, 2002, Mr. Lynch confirmed a telephone conversation with Ms. Carter of that date during which he "agreed to withdrawal [sic] my document request as a Freedom of Information Act and Internal Revenue Code § 6103 Request, provided my request can be reinstituted without prejudice as a FOIA request upon my subsequent written notice to you." A further letter of May 30, 2002, from Mr. Lynch to Ms. Carter confirmed a meeting scheduled for June 13, 2002, as well as Mr. Lynch's understanding that "a six or seven inches high

---

[5] The power of attorney authorized representation with respect to employment taxes for certain quarterly periods in 1982, 1983, and 1986, as well.

stack of records concerning Mr. Newstat and his federal tax liabilities" would be available at the meeting for his review.

However, by letter dated June 11, 2002, Mr. Lynch asked that Ms. Carter contact him to reschedule the planned meeting. The basis for this request was that petitioner wished to be present when the records were reviewed but would be unable to attend the June 13, 2002, conference because of health problems. Mr. Lynch also enclosed with the letter a new Form 2848 authorizing his representation of petitioner for "All tax periods 1980 through 2001, inclusive" on grounds that "there may be issues for years other than those set forth on my previously submitted power of attorney".

Per Mr. Lynch's request, the meeting was rescheduled for June 26, 2002. A letter from Mr. Lynch to Ms. Carter dated June 13, 2002, confirmed this date and communicated the following:

> Both Mr. Newstat and I will attend to review his file. I will provide Mr. Newstat with forms 433-A and 433-B. I need to first confirm there are outstanding tax liabilities. I understand if Mr. Newstat does not submit the financial disclosure forms during our meeting, you will permit Mr. Newstat to review and copy portions of his file but will likely close the appeal file concerning this matter and the Service will resume collection activity.

Mr. Lynch provided petitioner with a copy of this letter.

On June 26, 2002, Mr. Lynch, but not petitioner, attended the scheduled meeting with Ms. Carter. At the meeting, Mr. Lynch reviewed the files made available to confirm petitioner's

liabilities and asked Ms. Carter to photocopy and provide selected documents from those files.  Mr. Lynch concurred with Ms. Carter that he would submit petitioner's Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, within 2 weeks so that collection alternatives could be considered.  Approximately 2 months later,[6] Mr. Lynch advised Ms. Carter by letter dated August 28, 2002, that petitioner had been hospitalized several times over the summer but that a meeting had been scheduled with petitioner for September 3, 2002, to complete the Form 433-A.

Thereafter, a letter dated September 27, 2002, and referencing in the heading both the 1985 and 1999 tax periods,[7] was sent by Ms. Carter to Mr. Lynch.  The letter stated:

> Enclosed you will find the documents you requested during our conference with respect to the above referenced matter.  According to your letter dated August 28, 2002, you were to call me after you met with Mr. Newstat to finalized [sic] Form 433-A on September 3, 2002.  I have not heard from you to date nor have I received Form 433-A as requested.  Therefore, a determination has been made to uphold the collection action proposed with respect to the above periods.
>
> You and Mr. Newstat will be receiving the determination letters issued discussing the basis for my findings.

------

[6] The stipulation of facts filed by the parties incorrectly refers to the Aug. 28, 2002, letter as being sent approximately 1 month after the June 26, 2002, meeting.

[7] The heading likewise listed the various period in 1982, 1983, and 1986 germane to the trust fund recovery penalties.

On that September 27, 2002, date, respondent also issued to petitioner the aforementioned Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. The notice expressly pertained to the 1985 and 1999 taxable years[8] and sustained the proposed levy action. An attachment to the notice recounted the administrative history of petitioner's case and concluded with the following:

> The liability at issue for tax years 1985 and 1989 [sic] resulted from self-filed income tax returns that have gone unpaid to date. Mr. Newstat failed to submit Form 433-A and without this information I am unable to evaluate your ability to pay. Since we were unable to fully pursue collection alternatives because of your lack of interest, collection alternatives could not be achieved. Thus, the notice of intent to levy is necessary and the least intrusive means of collection.

Petitioner's petition challenging this notice of determination was filed with the Tax Court on October 31, 2002, at which time petitioner resided in Mt. Laurel, New Jersey. The petition focused on petitioner's contention that he was denied a "Due Process Hearing" and prayed that the Court issue an order that he be provided with such a hearing.

Petitioner's case was initially calendared for trial in Philadelphia, Pennsylvania, on October 20, 2003, but was continued to February 9, 2004, on petitioner's motion, which motion relied principally on his assertions of poor health.

---

[8] A separate notice of determination was issued regarding the trust fund recovery penalties.

Respondent on December 8, 2003, then filed a motion for summary judgment. After an extension of time, again requested on claims of poor health, petitioner filed a response opposing the motion. Petitioner reiterated his position that he never received a "due process hearing" and also, for the first time, alleged that the original assessment of the 1985 liabilities in November of 1986 was prohibited by the bankruptcy law then in effect (and that the period of limitations for a proper assessment had since expired).[9]

Respondent's motion for summary judgment was denied, and the parties ultimately agreed to submit this case fully stipulated under Rule 122. Both parties filed opening and reply briefs, although petitioner did so only after being granted extensions of time on account of further assertions of health problems.

<u>Discussion</u>

I. <u>General Rules</u>

Section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a taxpayer where there exists

---

[9] Petitioner has at no time contended, nor does the record support, that the point raised in his Form 12153, Request for a Collection Due Process Hearing, regarding expiration of the period of limitations for 1985 was intended to refer to other than, as interpreted by respondent, the statute of limitations on <u>collection</u>. Respondent's subsequent communications clearly expressed and addressed this understanding of the issue, and neither petitioner nor his representatives ever sought to alter that understanding or otherwise to focus discussion on any perceived problem with the <u>assessment</u>.

a failure to pay any tax liability within 10 days after notice and demand for payment.  Sections 6331(d) and 6330 then set forth procedures generally applicable to afford protections for taxpayers in such levy situations.  Section 6331(d) establishes the requirement that a person be provided at least 30 days' prior written notice of the Commissioner's intent to levy before collection may proceed.  Section 6331(d) also indicates that this notification should include a statement of available administrative appeals.  Section 6330(a) expands in several respects upon the premise of section 6331(d), forbidding collection by levy until the taxpayer has been furnished notice of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals.  Section 6330(b) grants a taxpayer who so requests the right to a fair hearing before an impartial Appeals officer.

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to

the unpaid tax or the proposed levy,
including--

>(i) appropriate spousal defenses;

>(ii) challenges to the
appropriateness of collection actions;
and

>(iii) offers of collection
alternatives, which may include the
posting of a bond, the substitution of
other assets, an installment agreement,
or an offer-in-compromise.

>(B) Underlying liability.--The person
may also raise at the hearing challenges to
the existence or amount of the underlying tax
liability for any tax period if the person
did not receive any statutory notice of
deficiency for such tax liability or did not
otherwise have an opportunity to dispute such
tax liability.

Once the Appeals officer has issued a determination
regarding the disputed collection action, section 6330(d) allows
the taxpayer to seek judicial review in the Tax Court or a
District Court, depending on the type of tax involved.  In
considering whether taxpayers are entitled to any relief from the
Commissioner's determination, this Court has established the
following standard of review:

>where the validity of the underlying tax liability is
properly at issue, the Court will review the matter on
a de novo basis.  However, where the validity of the
underlying tax liability is not properly at issue, the
Court will review the Commissioner's administrative
determination for abuse of discretion. [Sego v.
Commissioner, 114 T.C. 604, 610 (2000).]

II. <u>Analysis</u>

    A.   <u>1985</u>

        1.   <u>Appeals Hearing</u>

The petition focuses on petitioner's contention that he was not afforded a "Due Process Hearing" and requests that this case be remanded for such a hearing.  Petitioner acknowledges that a meeting between his representative and Ms. Carter took place on June 26, 2002, but he argues that this meeting was merely for review of documents in lieu of his FOIA request concerning the 1985 year and was not a "Due Process Hearing".  He thus does not dispute that the June 26, 2002, meeting pertained to 1985 but claims that it was not the hearing provided for in section 6330. Relevant caselaw precedent and regulatory authority, however, indicate that the circumstances here are not such as to render remand appropriate for further consideration of 1985.

Hearings conducted under section 6330 are informal proceedings, not formal adjudications.  <u>Katz v. Commmissioner</u>, 115 T.C. 329, 337 (2000); <u>Davis v. Commissioner</u>, 115 T.C. 35, 41 (2000).  There exists no right to subpoena witnesses or documents in connection with section 6330 hearings.[10]  <u>Roberts v.</u>

---

[10] To the extent that certain of petitioner's statements raise the complaint that respondent failed to produce a "certificate of assessments" for 1985 until after the petition was filed in this case, sec. 6330 imposes no requirement that the taxpayer be provided with such documentation.  <u>Nestor v. Commissioner</u>, 118 T.C. 162, 166-167 (2002).  Furthermore, in

                                                                 (continued...)

Commissioner, 118 T.C. 365, 372 (2002), affd. 329 F.3d 1224 (11th Cir. 2003); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Davis v. Commissioner, supra at 41-42. Taxpayers are entitled to be offered a face-to-face hearing at the Appeals Office nearest their residence. Where the taxpayer declines to participate in a proferred face-to-face hearing, hearings may also be conducted telephonically or by correspondence. Katz v. Commissioner, supra at 337-338; Dorra v. Commissioner, T.C. Memo. 2004-16; sec. 301.6330-1(d)(2) Q&A-D6 and D7, Proced. & Admin. Regs. Furthermore, once a taxpayer has been given a reasonable opportunity for a hearing but has failed to avail himself or herself of that opportunity, we have approved the making of a determination to proceed with collection based on the Appeals officer's review of the case file. See, e.g., Taylor v. Commissioner, T.C. Memo. 2004-25; Leineweber v. Commissioner, T.C. Memo. 2004-17; Armstrong v. Commissioner, T.C. Memo. 2002-224; Gougler v. Commissioner, T.C. Memo. 2002-185; Mann v. Commissioner, T.C. Memo. 2002-48. Thus, a face-to-face meeting is not invariably required.

Regulations promulgated under section 6330 incorporate many of the foregoing concepts, as follows:

_____

[10](...continued)
light of the Court's conclusions infra regarding res judicata, petitioner would lack grounds for arguing that he was prejudiced in raising any available issues concerning assessment validity by the alleged delay.

Q-D6.  How are CDP hearings conducted?

A-D6.  * * * CDP hearings * * * are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting.  A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between the Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. * * *

Q-D7.  If a taxpayer wants a face-to-face CDP hearing, where will it be held?

A-D7.  The taxpayer must be offered an opportunity for a hearing at the Appeals office closest to taxpayer's residence or, in the case of a business taxpayer, the taxpayer's principal place of business. If that is not satisfactory to the taxpayer, the taxpayer will be given an opportunity for a hearing by correspondence or by telephone.  If that is not satisfactory to the taxpayer, the Appeals officer or employee will review the taxpayer's request for a CDP hearing, the case file, any other written communications from the taxpayer (including written communications, if any, submitted in connection with the CDP hearing), and any notes of any oral communications with the taxpayer or the taxpayer's representative.  Under such circumstances, review of those documents will constitute the CDP hearing for the purposes of section 6330(b).  [Sec. 301.6330-1(d)(2) Q&A-D6 and D7, Proced. & Admin. Regs.]

This Court has cited the above regulatory provisions with approval.  See, e.g., Taylor v. Commissioner, supra; Leineweber v. Commissioner, supra; Dorra v. Commissioner, supra; Gougler v. Commissioner, supra.

With respect to the instant case, petitioner was initially provided with an opportunity for a face-to-face hearing by means of Ms. Carter's March 28, 2002, letter scheduling a conference

for April 9, 2002.  The letter referenced the 1985 tax year and clearly explained that the purpose of the conference was to accomplish objectives outlined in section 6330; i.e., to address the issues raised in petitioner's appeal request and to discuss collection alternatives.  The letter also warned that failure to appear or to make alternative arrangements would result in closing of the matter based on information in the case file.

Petitioner declined to meet with Ms. Carter on April 9th, and his representative sent a letter stating that he would call Ms. Carter "to reschedule a meeting, if appropriate."  A conference was eventually scheduled, after delay attempting to accommodate petitioner, for June 26, 2002.  Although it is apparent that document review precipitated by the FOIA request was to be a part of the meeting, the record does not support petitioner's claim that the conference was entirely separate and otherwise divorced from petitioner's broader collection appeal for 1985.  Mr. Lynch explicitly stated in his letter of June 13, 2002, discussing the scheduled appointment:  "I understand if Mr. Newstat does not submit the financial disclosure forms during our meeting, you will permit Mr. Newstat to review and copy portions of his file but will likely close the appeal file concerning this matter and the Service will resume collection activity."

The above-quoted language evidences an awareness that the June 26, 2002, meeting was also to be petitioner's forum for advancing issues such as collection alternatives.  Furthermore, a copy of the letter was sent to petitioner, such that he should have been alerted if this scenario differed from his own understanding.

When petitioner was unable personally to attend the June 26, 2002, meeting, Ms. Carter met with his representative and even waited 3 more months for any additional information from petitioner before closing the case.  Mr. Lynch apparently attempted to meet with petitioner during that time to obtain completed financial forms.  Petitioner recites in his petition:

> The reason Newstat did not respond to Appeal Officer request for production of form 433-A- was that between April to September 2002 and continuing at this time his income was in disarray.  * * * He wanted to have a grasp of his income before he gave out Form 433-A.  Newstat had read section 6330 and believed presenting and explaining his financial condition at due process hearing in person was his right and he did not lose that right by waiting until due process hearing to present and explain himself in person.

A difficulty with this posture is that respondent cannot be expected to wait indefinitely until a taxpayer is ready to submit information germane to his or her collection case.[11]  In

_____

[11] Considerations of both practicality and fairness are implicated in this premise.  Indefinite delay in the payment of tax is the equivalent of nonpayment.  The Government, upon which all citizens depend, cannot function if tax revenues are not collected.  Unjustified delay by some is unfair to those who

(continued...)

addition, with regard to his desire to submit information in person, petitioner had been unable to attend any of the previously proposed conferences and at no time communicated to Ms. Carter a readiness or willingness to meet after the June 26, 2002, date.  Moreover, the above-quoted regulations confirm that a conference between an Appeals officer and a taxpayer's representative, not the taxpayer himself, may fulfill the statutory directive for a hearing.

Hence, at the time respondent issued the notice of determination, Ms. Carter had addressed in writing the sole statute of limitations issue raised by petitioner for 1985 in his Form 12153[12] and had held a face-to-face conference with petitioner's representative, the consequences of which Mr. Lynch clearly understood and had communicated to petitioner.  In these circumstances, the Court is satisfied that, with respect to 1985, petitioner was offered and received a full and fair hearing which complied with the requirements of section 6330.

### 2.  Review of Underlying Liabilities

As previously indicated, the petition filed in this case focused solely on the contention that petitioner had not been afforded a proper hearing for purposes of section 6330.

---

[11](...continued)
shoulder their burden to pay timely.

[12] See supra note 9.

Petitioner's opposition to respondent's motion for summary judgment and his posttrial briefs, however, raise the argument that the assessment of his 1985 liabilities was invalid on account of his then-pending bankruptcy, with the corresponding implication that the statute of limitations on assessment has now expired.

This Court has held that claims regarding whether assessments were made within the limitations period constitute challenges to the underlying tax liabilities. Hoffman v. Commissioner, 119 T.C. 140, 145 (2002); Rodriguez v. Commissioner, T.C. Memo. 2003-153; MacElvain v. Commissioner, T.C. Memo. 2000-320. Respondent advances several arguments as to why petitioner is not entitled to so challenge his underlying 1985 liabilities in this proceeding. Respondent's principal assertions in this regard are that petitioner is precluded from raising the validity of the 1985 assessment here either by res judicata or by the fact that petitioner failed to raise the issue during the collection hearing process.

The U.S. Supreme Court in Commissioner v. Sunnen, 333 U.S. 591, 597 (1948), summarized the judicial doctrine of res judicata, i.e., claim preclusion, in the following oft-quoted pronouncement:

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty

in legal relations.  The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."  Cromwell v. County of Sac, 94 U.S. 351, 352.  The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.  * * *

The Supreme Court also addressed application of the foregoing principles in the particular context of tax litigation:

These same concepts are applicable in the federal income tax field.  Income taxes are levied on an annual basis.  Each year is the origin of a new liability and of a separate cause of action.  Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. * * *  [Id. at 598.]

The Tax Court and other courts have since interpreted the Supreme Court's directives specifically as they pertain to decisions of this Court.  We, for instance, have stated:  "As a general rule, * * * where the Tax Court has entered a decision for a taxable year, both the taxpayer and the Commissioner (with certain exceptions) are barred from reopening that year." Hemmings v. Commissioner, 104 T.C. 221, 233 (1995).  Likewise, "the Tax Court's jurisdiction, once it attaches, extends to the entire subject of the correct tax for the particular year." Erickson v. United States, 159 Ct. Cl. 202, 309 F.2d 760, 767 (1962).

Here, respondent issued to petitioner a notice of deficiency on October 14, 1992, with respect to his 1985 taxable year, and petitioner instituted a case for redetermination in this Court. That case was concluded without trial by entry of a stipulated decision on December 20, 1995. The decision provided that there was "no deficiency in income tax due from, nor overpayment due to, the petitioner for the taxable year 1985".

Now, however, petitioner in essence seeks to argue that he overpaid his taxes for 1985. If petitioner's reported liability of $187,911 was never validly assessed, then the taxes would not, as a legal matter, be considered owed by or due from petitioner. As a result, the $66,747 paid by petitioner for 1985 through withholding and credited to that liability would constitute an overpayment. For tax purposes, "overpayment" is typically defined in its usual sense as "any payment in excess of that which is properly due." Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947); see also Estate of Smith v. Commissioner, 123 T.C. 15, 21 (2004). Petitioner could have made this challenge during the earlier Tax Court proceeding and did not do so. This Court has jurisdiction to determine overpayments in the context of deficiency proceedings, and the cause of action or claim in a deficiency proceeding thus encompasses the amount of tax, if any, that a party is required to pay for the taxable period under

consideration.  Sec. 6512(b); Barton v. Commissioner, 97 T.C. 548, 552-554 (1991).

The validity of the assessment is therefore a matter that could have been raised and litigated in connection with the deficiency proceeding, which involved the identical parties and the same tax year.  Accordingly, because the decision in that case was not appealed and has since become final, res judicata precludes petitioner from now disputing the validity of the underlying 1985 assessment in this collection action.

Petitioner's sole argument on brief with respect to res judicata rests on his complaint that the 1985 case was concluded by a stipulated decision.  Petitioner states in this regard: "There are no details presented to Court as to what was considered to reach that stipulation between the parties; res judicata depends upon judgment on the merits.  In that case the judgment was entered by practice, and or [sic] procedure which is distinguished from judgment on merits."

Contrary to petitioner's position, however, it is well-settled, blackletter law that "For res judicata purposes, an agreed or stipulated judgment is a judgment on the merits." Baker v. IRS, 74 F.3d 906, 910 (9th Cir. 1996); see also United States v. Intl. Bldg. Co., 345 U.S. 502, 503-506 (1953) (upholding res judicata effect of stipulated Tax Court decisions, regardless of whether the underlying agreement reached the

"merits" of the controversy); <u>Erickson v. United States</u>, <u>supra</u> at 768 (same); <u>Krueger v. Commissioner</u>, 48 T.C. 824, 828-829 (1967) (same).

The Court concludes that the circumstances of the instant case meet all prerequisites for application of res judicata and that petitioner is precluded under the doctrine from challenging his underlying liability for 1985 in this proceeding. Hence, petitioner's challenge to the validity of the assessment provides no defense to the proposed collection action, and we need not reach respondent's alternative contention that failure to raise the issue during the Appeals hearing process would likewise foreclose its consideration before this Court.[13]

---

[13] Additionally, the Court notes that petitioner's stated contention that, pursuant to sec. 6330(c)(1), it was the responsibility of the Appeals officer to determine whether relevant law and procedure had been complied with in the assessment and collection process does not here warrant a departure from application of res judicata. First, since petitioner has at no time throughout the administrative proceeding or this litigation produced any evidence establishing the specific dates or circumstances of his bankruptcy action, to accept his contention as sufficient to invalidate the determination would work a significant broadening of the verification requirement beyond the parameters suggested in this Court's prior jurisprudence. See <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 186-188 (2001) (upholding use of IRS transcripts for purposes of complying with the verification requirement until the taxpayer provides evidence of irregularity in assessment process). Second, although the Secretary retained authority to abate the challenged assessment in these circumstances if he concluded it was procedurally defective, that authority is discretionary, not mandatory. Given petitioner's earlier opportunity to raise this challenge in his deficiency case and his signing of a stipulated decision to the contrary, the Court

(continued...)

### 3. Review for Abuse of Discretion

In light of the Court's conclusions supra regarding challenges to the underlying liabilities, disposition of this case as to 1985 rests upon whether the record reflects an abuse of discretion on the part of respondent in determining to proceed with collection efforts in the form of levy. Action constitutes an abuse of discretion under this standard where it is arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). The Court considers whether the Commissioner committed an abuse of discretion in rejecting a taxpayer's position with respect to any relevant issues, including those items enumerated in section 6330(c)(2)(A); i.e., spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives.

Here, to the extent that petitioner's apparent interest in a collection alternative such as an installment agreement or offer in compromise might pertain to 1985 as well as 1999, the record reflects no abuse of discretion by respondent in deciding instead to proceed with levy. To enable the Commissioner to evaluate a taxpayer's qualification for an installment agreement or offer in compromise, and particularly in the face of allegations of

---

[13](...continued)
would be hard pressed to declare that an abuse of discretion was committed in relying on the outcome of the previous litigation.

economic hardship, the taxpayer must submit complete financial data.

Petitioner, however, has never supplied a completed Form 433-A or other financial information to respondent, despite requests from respondent and the efforts and warnings of his own representative. Mr. Lynch's June 13, 2002, letter, of which a copy was sent to petitioner, expresses clearly that petitioner would be expected to provide relevant financial disclosure forms at the June 26, 2002, meeting in order to prevent closure of his case and resumption of collection activity. In light of this admonition, petitioner's continued recalcitrance after the conference with regard to supplying the necessary data is not well taken.

Consequently, although the Court is sympathetic to difficulties petitioner may have encountered in connection with his health and economic situation, it cannot be said that respondent acted arbitrarily or capriciously in determining to proceed with levy for 1985 when petitioner submitted no documentation, during or after a proper hearing, of his financial circumstances. The Court shall sustain respondent's collection action with respect to 1985.

B. 1999

With respect to 1999, petitioner's submissions to this Court focus solely on his contention that he did not receive a "due

process hearing". Specifically, petitioner states on brief that "after petitioner requested his 1999 case be returned to New Jersey, from Oklahoma City OK.[sic], the record is blank and respondents [sic] did not address that case; there was no due process hearing concerning that case and it cannot be included in Notice of determination as after thought [sic]."

As previously indicated, the record for 1985 reveals that a conference concededly pertaining to petitioner's 1985 year was held on June 26, 2002, and that petitioner's representative understood, and communicated to petitioner, that the outcome of the meeting could lead to closure of the collection case and resumption of collection activity. Concerning 1999, in contrast, the record is essentially silent from the time of petitioner's February 7, 2002, request for transfer to New Jersey until the issuance of the notice of determination addressing both 1985 and 1999 on September 27, 2002.

The notice of determination supports that the 1999 case was at some point assigned to Ms. Carter, but there is no indication as to when the assignment occurred or whether the assignment was ever communicated to petitioner or his representative. None of the interim letters reference 1999 or the contentions raised by petitioner in his Form 12153 for that year. Rather, the only explicit mention of 1999 is on the power of attorney submitted by Mr. Lynch on April 22, 2002, which authorized his representation

of petitioner in connection with income taxes for 1985, 1999, and 2000. That year was also included by reference to the taxable years 1980 through 2001 specified in the power of attorney submitted by Mr. Lynch on June 11, 2002. These documents fall short of establishing an understanding that 1999 was presently before Ms. Carter and that any upcoming meeting would pertain to 1999. Any such implications are further weakened by the fact that no evidence indicates that the years 1980, 1981, 1984, 1987, 2000, and 2001, likewise listed on one or both of the Forms 2848, were the subject of any collection proceeding.

Given the overall state of the record, the Court cannot conclude from the evidence that either petitioner or Mr. Lynch was aware that Ms. Carter was simultaneously handling the 1985 and 1999 years and that communications during the spring of 2002 and the June 26, 2002, conference were to represent petitioner's opportunity to be heard with respect to his 1999 year. In these circumstances, the Court holds that petitioner has not been afforded a hearing within the meaning of section 6330 for the 1999 year.

The foregoing conclusion does not, however, end the inquiry. As this Court has indicated, remand to Appeals, even in cases where a proper section 6330 hearing was not held, is appropriate only when "necessary or productive". Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); see, e.g., Harrell v. Commissioner,

T.C. Memo. 2003-271 (concluding that circumstances justified remand). Conversely, for instance, we do not remand cases where the only arguments advanced are based on previously rejected legal propositions or where the existing record allows for disposition of all issues raised without need for further development before Appeals. E.g., <u>Keene v. Commissioner</u>, 121 T.C. 8, 19-20 (2003); <u>Lunsford v. Commissioner</u>, <u>supra</u> at 189; <u>Kemper v. Commissioner</u>, T.C. Memo. 2003-195.

Here, because the assessments at issue for 1999 were based upon the amounts reported on petitioner's filed tax return, and petitioner never received a notice of deficiency or other opportunity to dispute those amounts, he would be entitled to challenge his underlying liabilities in this collection proceeding. <u>Montgomery v. Commissioner</u>, 122 T.C. 1, 9 (2004). The Form 12153 submitted by petitioner indicates a desire to claim business expenses not shown on his original return. In light of our conclusion regarding the lack of a hearing for 1999, we believe that petitioner should be afforded a final opportunity to supply relevant documentation. Petitioner will also have a further chance to raise relevant issues reviewed for abuse of discretion, such as collection alternatives.

We caution petitioner, however, that were it not for the unusual circumstances of this case, his history of delay and failure to supply information would give us pause. We remind

petitioner that section 6330 does not afford him an unlimited right to present information in person and at a time or place of his choosing.  If petitioner cannot <u>promptly</u> meet with an Appeals officer to submit documentation and other pertinent data, we would expect him to do so through a representative or by written or telephonic communication.  Otherwise, respondent will be in a position to close petitioner's 1999 case on the existing record.

In conclusion, with respect to 1985, the Court will sustain respondent's determination to proceed with collection action. With respect to 1999, the Court will remand the case for further proceedings, in the form of a section 6330 hearing, before Appeals.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.