T.C. Memo. 2005-262


UNITED STATES TAX COURT


ROBERT NEWSTAT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket No. 16989-02L.            Filed November 10, 2005.


    P initially filed a petition for judicial review
pursuant to sec. 6330, I.R.C., in response to a
determination by R that levy action was appropriate for
the taxable years 1985 and 1999.  Following remand for
further administrative consideration of the 1999 year,
R issued a supplemental determination upholding levy
action for that year.

    <u>Held</u>:  R's determination to proceed with
collection action for 1999 is sustained.


Robert Newstat, pro se.

<u>Jack T. Anagnostis</u>, for respondent.

_____

    *  This opinion supplements our previously filed Memorandum
Opinion in <u>Newstat v. Commissioner</u>, T.C. Memo. 2004-208.

SUPPLEMENTAL MEMORANDUM OPINION

WHERRY, Judge:  This case was initially filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 with respect to petitioner's 1985 and 1999 taxable years.[1]  In a previous opinion, Newstat v. Commissioner, T.C. Memo. 2004-208, the Court sustained respondent's collection determination as to 1985 and remanded the matter for further consideration before the Internal Revenue Service (IRS) Office of Appeals as to 1999.  Following the remand, respondent issued a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, and the case is once more before the Court.  The issue for decision is whether respondent may proceed with collection for 1999.

Background

On September 16, 2004, the Court issued its opinion in Newstat v. Commissioner, supra.  As explained therein, we could not conclude from the evidence that petitioner understood that the Appeals officer was simultaneously handling both his 1985 and 1999 years.  Hence, we were likewise unable to conclude that petitioner was aware that the communications and conference

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

transpiring with the Appeals officer in the spring and summer of 2002 were to represent his opportunity to be heard with respect to 1999 as well as 1985. Accordingly, the Court held as follows regarding 1999:

> Here, because the assessments at issue for 1999 were based upon the amounts reported on petitioner's filed tax return, and petitioner never received a notice of deficiency or other opportunity to dispute those amounts, he would be entitled to challenge his underlying liabilities in this collection proceeding. Montgomery v. Commissioner, 122 T.C. 1, 9 (2004). The Form 12153 submitted by petitioner indicates a desire to claim business expenses not shown on his original return. In light of our conclusion regarding the lack of a hearing for 1999, we believe that petitioner should be afforded a final opportunity to supply relevant documentation. Petitioner will also have a further chance to raise relevant issues reviewed for abuse of discretion, such as collection alternatives.
>
> We caution petitioner, however, that were it not for the unusual circumstances of this case, his history of delay and failure to supply information would give us pause. We remind petitioner that section 6330 does not afford him an unlimited right to present information in person and at a time or place of his choosing. If petitioner cannot promptly meet with an Appeals officer to submit documentation and other pertinent data, we would expect him to do so through a representative or by written or telephonic communication. Otherwise, respondent will be in a position to close petitioner's 1999 case on the existing record. [Newstat v. Commissioner, supra.]

The Court also issued an order dated September 16, 2004, directing that an administrative hearing be offered to petitioner, to be held no later than January 15, 2005, and that the parties submit status reports on or before January 31, 2005.

On January 25, 2005, a motion for reconsideration from petitioner was filed by leave of Court. Respondent was ordered to file any response on or before February 25, 2005.

Respondent and petitioner then filed status reports on January 28 and February 7, 2005, respectively. The reports indicated that Appeals Officer Joan R. Carter had contacted petitioner by telephone on October 26, 2004, in an attempt to schedule a hearing in compliance with the Court's September 16, 2004, order. Petitioner had communicated that he hoped to engage an attorney to appeal the Court's ruling and to represent him at the hearing. A followup letter sent by Ms. Carter on November 12, 2004, stated that petitioner had assured Ms. Carter that a representative would contact her on November 3, 2004, but that no call had been received. The letter also enclosed a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, for petitioner's completion and as a prerequisite to consideration of any collection alternatives.

On February 28, 2005, respondent filed a notice of objection to petitioner's motion for reconsideration, together with a memorandum of points and authorities in support thereof. On March 2, 2005, the Court denied petitioner's motion. We concluded that petitioner had not met the standards necessary to obtain reconsideration with respect to the principal subject of his motion, i.e., the issue of res judicata as it pertained to

his 1985 year, and we added the following caution directed toward 1999:

> Regarding 1999, the parties have filed status reports indicating that petitioner, in contravention of the Court's September 16, 2004, order directing that an administrative hearing before the Internal Revenue Service Office of Appeals be held on or before January 15, 2005, has refused to so meet. Petitioner has apparently declined the offered hearing on two principal grounds, i.e., that he wished first to dispute or "appeal" the Court's ruling as to 1985, and that he was attempting to obtain funds to engage an attorney.
>
> To eliminate any possible misunderstanding, we clarify that because the 1985 and 1999 years are docketed as a single case, the Court must enter a decision as to both years before any portion of the opinion at T.C. Memo. 2004-208 will be subject to appeal.[2] The Court will afford petitioner a final opportunity to seek administrative resolution with respect to 1999 by extending the date for an Appeals Office hearing to March 31, 2005. However, we again caution petitioner that should he not promptly take advantage of this chance to be heard, either in person, by telephone, or through correspondence, the Court expects that respondent will issue a supplemental notice of determination on the existing record and, if such determination remains in dispute between the parties, this case will then be set for trial as to 1999. If petitioner is presently unable to afford an attorney, it is nonetheless his obligation to proceed with alacrity in a pro se manner; the Court will tolerate no further delay.

---

[2] This general principle is applied by the Court of Appeals for the Third Circuit, to which appeal in the instant case would normally lie, absent issuance of an order making a determination analogous to those made under Fed. R. Civ. P. 54(b) that a matter is an appropriately final subject for appeal. N.Y. Football Giants, Inc. v. Commissioner, 349 F.3d 102, 106-107 (3d Cir. 2003); see also sec. 7482(a)(2).

We further directed the parties to file status reports on or before April 15, 2005.

Pursuant to the foregoing order, Ms. Carter on March 4, 2005, sent to petitioner a letter scheduling an appointment for March 22, 2005, and requesting that petitioner advise her by March 17, 2005, whether he preferred an in-person, telephone, or correspondence conference and if he needed to reschedule. The letter also asked that petitioner complete the Form 433-A to enable consideration of any collection alternatives. Through a series of facsimiles and phone calls, petitioner initially requested that an in-person hearing be held on March 28 or 29, 2005, and then rescheduled the conference for March 30 via telephone. Ms. Carter confirmed this understanding by a letter dated March 28, 2005, and further stated:

> You mentioned that you were unable to find any of your Schedule C business receipts or statements and was [sic] conceding this issue in full. You wish for this office to continue the task of evaluating collection alternatives.
>
> As requested, I have enclosed Form 433-A Collection Information Statement that you promised to complete and facsimile back tomorrow. We also discussed how the IRS has no record of you filing your income tax returns for years 2001 and 2002 and the need for you to gather your tax information so that you can file these delinquent returns with this office. * * * If you are required to file, you will be given 30 days to file your 2001 and/or 2002 tax returns with this office.

Another series of faxes from petitioner followed the above letter. On March 30, 2005, he asked that the conference be held

instead on March 31. On March 31, 2005, he advised Ms. Carter by fax that he would be calling late in the day because he had forgotten that he first needed to attend to a notice of tax sale for his residence that had been issued on account of unpaid State tax obligations. Petitioner failed to call later in the day but sent a fax the following afternoon saying that he had found a box of documents and would like an additional week to supply information. Further faxes on April 12, 14, and 15, 2005, dealt with petitioner's attempts to find and provide copies of his 2001 and 2002 returns.

The Court was informed of the above events by means of status reports filed by respondent and by petitioner on April 11 and 18, 2005, respectively. Petitioner, referencing various problems of age and health, asked to have until May 15, 2005, to complete work on the 1999 year. The Court thereafter, on May 16, 2005, received and filed as a status report a document from petitioner. The document alluded to various problems pertaining to petitioner's 2001 and 2002 returns.

The Court on May 19, 2005, held a conference call with petitioner and counsel for respondent. Counsel for respondent indicated that the Appeals Office was prepared to issue a supplemental notice of determination but would hold any action until an agreed deadline for petitioner to provide the alleged

box of documents, signed original 2001 and 2002 returns, and a Form 433-A.

On June 8, 2005, the Court received a final status report from petitioner, to which he had attached the aforementioned Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, issued on May 25, 2005. These documents reveal that while petitioner did provide signed copies of the 2001 and 2002 returns, he never produced any supporting documentation related to business expenses in 1999 and never completed a Form 433-A. Petitioner had apparently sought to have the Appeals Office permit some form of "standard" business expense allowance for 1999. Ultimately, the supplemental notice of determination upheld the proposed levy action with respect to 1999.

## Discussion

### I. General Rules

As explained in our previous opinion in this matter, section 6331(a) authorizes the Commissioner to levy upon all property and rights to property of a taxpayer where there exists a failure to pay any tax liability within 10 days after notice and demand for payment. Sections 6331(d) and 6330 then set forth procedures generally applicable to afford protections for taxpayers in such levy situations. Section 6331(d) establishes the requirement that a person be provided at least 30 days' prior written notice

of the Commissioner's intent to levy before collection may proceed.  Section 6331(d) also indicates that this notification should include a statement of available administrative appeals. Section 6330(a) expands in several respects upon the premise of section 6331(d), forbidding collection by levy until the taxpayer has been furnished notice of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals.  Section 6330(b) grants a taxpayer who so requests the right to a fair hearing before an impartial Appeals officer.

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and
>
> (iii) offers of collection alternatives, which may include the

posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows the taxpayer to seek judicial review in the Tax Court or a District Court, depending on the type of tax involved. In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

II. Analysis

1. Review of Underlying Liabilities

As the Court observed in Newstat v. Commissioner, T.C. Memo. 2004-208, petitioner would be entitled to dispute the underlying liability shown on his filed tax return for 1999. See Montgomery v. Commissioner, 122 T.C. 1, 9 (2004). In that connection, petitioner has repeatedly alluded to his entitlement to

unspecified business expenses deductions. Nonetheless, despite having been given every opportunity over a period in excess of 8 months between the issuance of our prior opinion and the supplemental notice of determination, petitioner has failed to produce an iota of supporting documentation substantiating such a claim. The Court is therefore not in a position to afford petitioner any relief in this regard.

2. Review for Abuse of Discretion

In evaluating the propriety of a collection determination, the Court reviews for abuse of discretion those issues enumerated in section 6330(c)(2)(A); i.e., spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. Action constitutes an abuse of discretion under this standard where it is arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Here, petitioner has at various junctures expressed an apparent interest in a collection alternative such as an installment agreement. However, again despite substantial additional time to meet the prerequisites for consideration of an alternative collection arrangement, the scenario before the Court remains virtually unchanged from that described within the context of the 1985 year in Newstat v. Commissioner, supra. We in that opinion stressed the concept that a taxpayer must supply

complete financial information, in particular a Form 433-A, before respondent will be considered to have committed an abuse of discretion in declining to accept an offer in compromise or installment agreement.  Id.  Because petitioner did not heed this warning, the Court lacks any ground for concluding that respondent acted arbitrarily or capriciously in determining to proceed with levy for 1999.

Thus, although the Court remains sympathetic to petitioner's health and economic situation and has given petitioner every chance to demonstrate his entitlement to relief, we are constrained to sustain respondent's supplemental collection determination as it pertains to the 1999 taxable year.  To reflect the foregoing and the Court's previous ruling,

Decision will be entered

for respondent.