T.C. Memo. 2011-56

UNITED STATES TAX COURT

DELORES CHENAULT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22806-09L.                    Filed March 9, 2011.

Delores Chenault, pro se.

<u>John S. Hitt</u> and <u>Mayer Y. Silber</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioner petitioned the Court under section
6330(d) to review the determination of respondent's Office of
Appeals (Appeals) sustaining a proposed levy upon petitioner's
property.[1]  Respondent proposed the levy to collect Federal

---

[1]Section references are to the Internal Revenue Code and
(continued...)

income taxes which petitioner reported as due on her 2003 Federal income tax return. We decide first whether petitioner is liable for the taxes she reported as due on her return. We hold she is. We decide second whether Appeals abused its discretion in sustaining the proposed levy. We hold it did not.

## Background

The parties' stipulation of facts and the accompanying exhibits are incorporated by this reference and are so found. When the petition was filed, petitioner lived in Illinois.

Petitioner was born on September 11, 1936. She worked as a principal stenographer for Cook County, Illinois, and the City of Chicago, until her retirement in May 1993. At some time in or around 1993 petitioner applied for and was approved to receive monthly payments under two separate annuity contracts.

First, petitioner applied to the Retirement Board (city board) of the Municipal Employees' Annuity and Benefit Fund of Chicago (city) for an annuity (city annuity). By letter dated September 21, 1993, the city board approved a monthly annuity of $389.67 payable to petitioner for life beginning on May 29, 1993. The monthly payment under the city annuity increased by $11.69 in September 1996 and in each September thereafter. The letter stated that $27 in Federal income tax would be withheld each

---

¹(...continued)
Rule references are to the Tax Court Rules of Practice and Procedure.

month and that the city annuity would become "fully taxable" to petitioner on January 29, 2015.  Petitioner's investment in the city annuity was $6,507 and her expected return was $175,688.

Second, petitioner applied to the Retirement Board (county board) of the County Employees' Annuity and Benefit Fund of Cook County (county) for an annuity (county annuity).[2]  By letter dated September 1, 1993, the county board approved a monthly annuity of $1,364.55 payable to petitioner for life beginning on June 1, 1993.  The monthly payment under the county annuity increased by $40.94 in January 1997 and in each January thereafter.  The record does not establish petitioner's investment in or expected return on the county annuity.

The Northern Trust Co. (Trust), as the city's paying agent, issued to petitioner a 2003 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.  That form reported that during 2003 petitioner received gross distributions of $11,594.84, consisting of a taxable amount of $11,383.76 and employee contributions or insurance premiums of $211.08.  The Trust withheld $864.

The Cook County Pension Fund also issued to petitioner a 2003 Form 1099-R.  That form reported gross distributions of $20,138.64, consisting of a taxable amount of $19,615.08 and

---

[2]We refer to the city annuity and the county annuity collectively as annuities.

employee contributions or insurance premiums of $523.56. The county withheld $1,268.10.

We understand that included in the amounts reported on the Forms 1099-R were payments from annuity contracts with the city and the county earned by petitioner's biological father (father) but payable to her. The record does not establish how petitioner became entitled to these amounts, the amounts petitioner's father contributed (if any), or the expected return.

Petitioner did not timely file a Federal income tax return for 2003, and respondent prepared a substitute for return on behalf of petitioner for that year. See sec. 6020(b)(1). Respondent also mailed to petitioner a Letter 2566 (SC/CG), Proposed Individual Income Tax Assessment (30-day letter), for 2003. In the 30-day letter, respondent notified petitioner that he had no record of having received petitioner's 2003 Federal income tax return and proposed an assessment using information returns that respondent had received from third-party payors. Respondent also requested that petitioner file a 2003 Federal income tax return.

On or about October 13, 2006, petitioner sent to respondent a Form 1040, U.S. Individual Income Tax Return, for 2003. That return reported, among other things, taxable pensions and annuities received by petitioner of $30,999 and Federal income taxes owed of $649. Petitioner did not pay all of the resulting

tax liability, and respondent assessed the liability as well as additions to tax for failure to file a return timely and failure to pay tax.[3]

On or about May 19, 2008, respondent issued to petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (final levy notice).  The final levy notice informed petitioner that respondent proposed to levy upon petitioner's property to collect Federal income tax for 2003.  The final levy notice advised petitioner that she could request a collection due process (CDP) hearing with Appeals as to the propriety of the proposed levy.

On June 2, 2008, petitioner asked Appeals for the referenced CDP hearing.  She also requested that the proposed levy be withdrawn.  Appeals granted petitioner's request for a CDP hearing but did not withdraw the proposed levy.  The CDP hearing was held with an Appeals officer by telephone on August 4, 2009.

On August 25, 2009, Appeals issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, and a supporting attachment (notice of determination).  The notice of determination (1) sustained respondent's proposed levy, (2) stated that all procedural and statutory requirements had been met, (3) recited reasons why

---

[3]Petitioner filed for bankruptcy some time before November 29, 2007, on which date her bankruptcy was discharged.

petitioner's challenges to her underlying tax liability could not be considered, and (4) determined that the proposed collection action balanced the need for efficient collection of taxes with petitioner's concern that the collection action be no more intrusive than necessary. In response to the notice of determination, petitioner petitioned the Court on September 23, 2009. A trial was held on November 23, 2010, during which only petitioner testified.

## Discussion

### I. Standard of Review

The applicable standard of review in an appeal brought under section 6330(d) depends on whether the underlying tax liability is properly at issue. Where the validity of the underlying tax liability is at issue, we review the taxpayer's liability de novo. Hoffman v. Commissioner, 119 T.C. 140, 144-145 (2002); Davis v. Commissioner, 115 T.C. 35, 39 (2000). Where the underlying tax liability is not at issue, we review the Commissioner's administrative determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). In general, a taxpayer may challenge the existence or amount of an underlying tax liability if he or she did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute that tax liability.

Sego v. Commissioner, 114 T.C. 604, 609 (2000); see also sec. 6330(c)(2)(B).

Petitioner did not receive a statutory notice of deficiency for 2003; and even though she reported taxes due on her 2003 Federal income tax return, she now asserts that she incorrectly included as gross income certain annuity payments she received. Because the underlying tax liability is properly at issue, we review the validity of petitioner's underlying tax liability de novo. See Montgomery v. Commissioner, 122 T.C. 1, 9 (2004).

II. Underlying Tax Liability

Petitioner mainly argues that annuity payments which she received in 2003 and reported as taxable on her tax return are not taxable to her. Respondent argues that these payments are taxable to petitioner as originally reported on her tax return. We agree with respondent.

In general, amounts received by a taxpayer under an annuity contract must be included in that taxpayer's gross income. Sec. 72(a); see also sec. 61(a)(9). Where appropriate, a taxpayer may exclude a portion of payments received under the annuity by applying an "exclusion ratio" to the payments received. Sec. 72(b). The exclusion ratio is calculated by dividing the taxpayer's "investment in the contract" by the expected return of the annuity contract. Sec. 72(b)(1); see also sec. 1.72-4(a)(1)(i), Income Tax Regs. A taxpayer's investment in the

contract depends on the amount of premium or other consideration paid for the contract.  Sec. 72(c)(1).  The nontaxable portion of the annuity is determined by applying the exclusion ratio to the payment received until the taxpayer has recovered his or her investment in the contract.  Sec. 72(b)(2).  Effectively, the nontaxable portion is a return of capital of the taxpayer's investment in the contract recovered proportionately over the life of the annuity.

A.  City Annuity

Petitioner argues that section 72(b) entitles her to exclude all payments she received under the city annuity contract in 2003.  We do not agree.  Petitioner received two annuities from the city, one related to her retirement and the second attributable to her father.  We consider each in turn.

For the portion of the city annuity which petitioner received as part of her retirement, petitioner's investment was $6,507 and her expected return was $175,688.  Thus, section 72(b) authorizes petitioner to exclude 3.7 percent of those payments received under the city annuity contract which are related to her retirement.[4]  As part of her retirement package from the city, petitioner was to receive $389.67 per month from May 1993 until

---

[4]The exclusion ratio is calculated as petitioner's investment in the contract, $6,507, divided by her expected return under the contract, $175,688, rounded to the nearest tenth of a percent.  See sec. 1.72-4(a)(2), Income Tax Regs.

August 1996, increased by $11.69 in September 1996 and each September thereafter. By the terms of the city annuity, therefore, petitioner was to receive total payments of $5,704.56 for 2003.[5] Section 72(b) entitled petitioner to recover 3.7 percent, or $211.08, as a nontaxable return of capital.[6] The balance of those proceeds, $5,493.48, is fully taxable to petitioner under sections 72(a) and 61(a)(9).

As explained above, we understand petitioner to have also received $5,890.28 in annuity payments from the city which were attributable to her father.[7] Petitioner does not dispute that she received these payments and has not offered any evidence which would allow us to conclude that they were not fully taxable to her. See Rule 142(a); Swanton v. Commissioner, T.C. Memo. 2010-140. We conclude that the $5,890.08 petitioner received in 2003 is taxable to her under sections 72(a) and 61(a)(9).

---

[5]As it related to her retirement, the city annuity was to pay petitioner $471.50 per month from January until August 2003 and $483.19 from September until December 2003. Total payments for 2003 of $5,704.56 are calculated by adding 8 months of payments of $471.50, or $3,772, and 4 months of payments of $483.19, or $1,932.76.

[6]Total annuity payments received of $5,704.56 multiplied by the exclusion ratio of 3.7 percent.

[7]As it related to her father, we understand that the city annuity paid to petitioner an additional $5,890.28 (gross distribution of $11,594.84 less $5,493.48 payments received under the city annuity less employee contribution or insurance premium of $211.08).

Form 1099-R issued to petitioner by the Trust is consistent with our analysis. That form reported gross distributions of $11,594.84, consisting of a taxable amount of $11,383.76 and employee contributions or insurance premiums of $211.08. The $211.08 reported as employee contributions or insurance premiums, we believe, represents the nontaxable return of capital described above. The $11,383.76 reported as taxable consists of the payments petitioner received from her retirement and on account of her father. Petitioner's reporting of the annuities on her 2003 Federal income tax return is consistent with our analysis as well as the Form 1099-R issued by the Trust. We conclude therefore that with respect to the annuity payments received from the city, petitioner's underlying tax liability is valid.

B.   <u>County Annuity</u>

Petitioner argues generally that the county annuity was not taxable to her. We disagree. Petitioner has not demonstrated what amount of the payments she received under the county annuity (if any) is to be excluded from her gross income. See Rule 142(a); Swanton v. Commissioner, supra. Nor has she provided us with sufficient information to make such a determination such as her investments in the contract or her expected return under the contract. Absent such evidence, we default to the general rules of sections 61(a)(9) and 72(a), which require petitioner to include in gross income the payments she received under the

county annuity.[8]  Petitioner's 2003 Federal income tax return is consistent with this analysis.  We therefore conclude that with respect to the annuity payments received from the county, petitioner's underlying tax liability is valid.

C.    Other Challenges to Underlying Tax Liability

Petitioner makes a number of other unpersuasive arguments to reduce or extinguish her 2003 tax liability.  First, she contends that the payors of the annuities should be held liable for her 2003 Federal income tax liability because the Federal income taxes withheld were not sufficient to satisfy her tax liability. We disagree.  The payor of an annuity is generally required to withhold amounts paid under an annuity contract as if those payments were wages paid by an employer to an employee.[9]  Sec. 3405(a)(1).  But that withholding obligation does not excuse the taxpayer from his or her duty to report income and pay the resulting tax.  See, e.g., Church v. Commissioner, 810 F.2d 19, 20 (2d Cir. 1987); Anderson v. Commissioner, T.C. Memo. 2007-265. It is a fundamental principle of tax law that income is taxed to the person who earns it.  Commissioner v. Culbertson, 337 U.S.

---

[8]Respondent does not challenge petitioner's ability to exclude from gross income the amount listed as employee contributions or insurance premiums on Form 1099-R issued by the county.

[9]A taxpayer may elect not to have Federal income taxes withheld from an annuity payment made to him or her.  See sec. 3405(a)(2); see also sec. 35.3405-1T(d), Q&A-D1, Temporary Employment Tax Regs., 47 Fed. Reg. 45873 (Oct. 14, 1982).

733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). Petitioner, as the person who received payments under the annuities, is liable for any taxes found to be due and owing therefrom.

Second, petitioner argues that respondent may not enforce collection of her 2003 Federal income tax liability by virtue of her 2007 bankruptcy discharge. We are not persuaded. Petitioner offered no objective evidence as to when she filed her bankruptcy petition or whether her 2003 tax liability was discharged. But it is more than petitioner's lack of supporting evidence which leads us to conclude that her testimony is not reliable. According to her testimony, petitioner would have us believe that a bankruptcy discharge under chapter 7 of the Bankruptcy Code discharged all of her liabilities as a matter of law. We reject petitioner's misstatement of the law.

A debtor who files a chapter 7 bankruptcy petition is generally discharged from personal liability for all debts incurred before the bankruptcy petition was filed. 11 U.S.C. sec. 727(b) (2006). However, that debtor is not discharged from claims for income taxes due for a tax year for which the due date for the return is within 3 years of the filing of the petition in bankruptcy. 11 U.S.C. secs. 523(a)(1)(A), 507(a)(8) (2006); see also Severo v. Commissioner, 129 T.C. 160, 165-166 (2007), affd. 586 F.3d 1213 (9th Cir. 2009). Petitioner's 2003 Federal income

tax return with extension was due by October 15, 2004. Secs. 6072(a), 6081(a). Thus, for petitioner's 2003 Federal income tax liability to have been dischargeable as a matter of law, petitioner's bankruptcy petition must have been filed after October 15, 2007. Absent corroborating evidence, we reject as improbable that petitioner's bankruptcy petition was discharged in just 45 days. Cf. Fed. R. Bankr. P. 4004(a) (affording creditors 60 days within which to file a notice of objection after the initial creditor's meeting). Moreover, even if the due date for petitioner's 2003 Federal income tax return related to a point outside the 3-year lookback period described above, her 2003 Federal income tax liability would still not have been dischargeable because she filed her return untimely less than 2 years before she entered into bankruptcy. See 11 U.S.C. sec. 523(a)(1)(B)(ii) (2006); Severo v. Commissioner, supra at 168. Petitioner has not proven that her 2003 income tax liability was discharged in bankruptcy.

Third, petitioner argues that she is entitled to an additional deduction by virtue of her age. Petitioner refers to the additional standard deduction amount available to taxpayers who reach the age of 65 before the close of the taxable year. See sec. 63(f)(1)(A). That additional amount, however, is available only to taxpayers who do not elect to itemize their deductions for the taxable year. See sec. 63(c)(3). Because

petitioner elected to itemize her deductions in 2003, she is not entitled to an additional deduction on account of her age. See id. In summary, we find petitioner liable for the taxes she reported as due on her 2003 Federal income tax return.

III. Determination To Proceed With Levy

Where as here we have found the liability underlying a proposed levy to be valid, we review Appeals' determination to proceed with the levy for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610. In order to prevail, a taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in law or fact. Rule 142(a); Woodral v. Commissioner, 112 T.C. 19, 23 (1999). We hold that Appeals did not abuse its discretion.

Where a taxpayer neglects or refuses to pay any tax for which he or she is liable within 10 days after notice and demand for payment, the Commissioner is authorized to collect such tax by levy upon the taxpayer's property. Sec. 6331(a). The Commissioner may not proceed with collection by levy until the taxpayer has been given written notice and an opportunity for a CDP hearing by Appeals. Sec. 6330(a) and (b); see also Davis v. Commissioner, 115 T.C. at 37.

At the CDP hearing Appeals must take into consideration (A) the verification that the requirements of applicable law and administrative procedure have been met, (B) any relevant issue

relating to the unpaid tax or the proposed levy, and (C) whether any proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the taxpayer that the collection be no more intrusive than necessary.  Sec. 6330(c)(3).  Following the CDP hearing Appeals must generally issue a notice of determination which sets forth its findings and decisions.  See sec. 6330(c)(3); see also sec. 301.6330-1(e)(3), Q&A-E8, Proced. & Admin. Regs.

As documented in the notice of determination, Appeals complied with its obligations to petitioner under section 6330. First, Appeals verified that respondent met the requirements of applicable law and administrative procedure in assessing and demanding payment from petitioner for the tax she reported as due on her 2003 return.  Second, Appeals invited petitioner to file an amended return if she did not agree with the underlying tax liability; but petitioner declined to do so.  Nor did petitioner request collection alternatives.  See Cessna v. Commissioner, T.C. Memo. 2009-301.  Third, Appeals properly balanced the need for efficient collection of taxes through the proposed levy against the concern that any collection action be no more intrusive than necessary.  Petitioner has not demonstrated any impropriety in Appeals' decision to sustain the proposed levy upon her property.  We therefore sustain respondent's

determination to proceed with the proposed levy as a permissible exercise of discretion.

We have considered all arguments raised by the parties and have found those arguments not discussed herein to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered for respondent.